UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| COLT'S MANUFACTURING COMPANY LLC, : Plaintiff, : : | : | CIVIL CASE NO. 3:23-CV-01156 (JCH) |
| v. | : : | |
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Defendants. | : : : : : : | JANUARY 27, 2025 |

**RULING ON MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS
(DOC. NO. 49)**

**I.    INTRODUCTION**

The plaintiff, Colt's Manufacturing Company LLC ("Colt's"), brings this suit against American International Specialty Lines Insurance Company ("AISLIC") and National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") (collectively, the "Insurers").  See Amended Complaint (Doc. No. 36) ("Am. Compl."). The defendants filed an Amended Counterclaim for breach of contract, reimbursement, and declaratory relief.  Answer to Amended Complaint and Amended Counterclaim (Doc. No. 54) ("Answer" or "Am. Countercl.").

Before this court is the plaintiff's Motion to Dismiss Defendants' Counterclaim (Doc. No. 49) ("Mot. to Dismiss Countercl.") and Memorandum in Support of Motion to Dismiss Counterclaim (Doc. No. 49-1) ("Pl.'s Mem."), which the defendants oppose. See Defendants' Memorandum of Law in Opposition to Motion to Dismiss Counterclaim (Doc. No. 55) ("Def.s' Opp'n"); Defendants' Sur-Reply in Opposition to Motion to

1

Dismiss Counterclaim (Doc. No. 71) ("Def.s' Sur-Reply").  For the reasons that follow, the Motion to Dismiss Counterclaim is granted in part and denied in part.

## II.  BACKGROUND

### A.  Factual Background[1]

Colt's is a firearms manufacturer incorporated in Delaware with its principal place of business in Connecticut.  Am. Countercl. at ¶ 10.  AISLIC and National Union are insurance companies: AISLIC is incorporated in Illinois with its principal place of business in New York, and National Union is incorporated in Pennsylvania with its principal place of business in New York.  See id. at ¶¶ 11–12.  In August 1999, the City of Gary, Indiana sued Colt's, among other firearms makers and distributors, seeking damages for harms allegedly caused by handguns to residents of the city.  Id. at ¶ 2.[2]  Colt's sought defense and indemnity coverage under policies sold by the Insurers for expenses arising from the Gary Lawsuit.  See id. at ¶¶ 3–5; Am. Compl. at ¶¶ 12, 32.

Soon after the commencement of the Gary Lawsuit, the parties disputed whether Colt's could claim coverage under the policies sold by the Insurers.  See Am. Countercl. at ¶ 6.  As an interim solution, the parties agreed to fund the Gary Lawsuit through a separate agreement, the Interim Defense Funding Agreement, effective as of October 1, 1999.  See id.; Am. Compl. at ¶ 55.  Simultaneously, the parties executed the Tolling and Non-Waiver Agreement also effective as of October 1, 1999.  Am. Countercl. at ¶ 7; Am. Compl. at ¶ 59.  The parties extended the Interim Defense Funding Agreement multiple times, including the final extension, the Fourth Amendment to and Extension of

---

[1] The facts are taken from the defendants' Amended Counterclaim, see Am. Countercl., and from the plaintiff's Amended Complaint (Doc. No. 36) ("Am. Compl.").  Where facts are taken from the Amended Complaint, they are admitted by the defendants.

[2] The court will refer to this action as the "Gary Lawsuit."

the Defense Funding Agreement, which is dated December 6, 2005 and is signed by representatives for Colt's, AISLIC and National Union. Am. Countercl. at ¶¶ 28, 31. Similarly, the Tolling and Non-Waiver Agreement was extended several times, including the last extension, the Fourth Amendment and Extension of the Tolling Agreement, also dated December 6, 2005, and signed by representatives for all parties. Id. at ¶¶ 32–35.

B. Procedural History

On August 31, 2023, the plaintiff filed the instant action invoking the court's diversity jurisdiction. See Complaint (Doc. No. 1). The plaintiff filed an Amended Complaint on March 26, 2024. See Am. Compl. On April 23, 2024, the defendants filed an Answer to the Amended Complaint. See Defendant's Answer to Amended Complaint and Counterclaim (Doc. No. 39). The plaintiff filed a Motion to Dismiss Counterclaim on June 13, 2024. See Mot. Dismiss Countercl. The defendants filed an Answer and Amended Counterclaim on July 8, 2024, along with an Opposition to the plaintiff's Motion to Dismiss Counterclaim. See Answer, Am. Countercl.; Def.s' Opp'n. The Amended Counterclaim includes attachments of executed versions of the Interim Defense Funding Agreement and the Tolling and Non-Waiver Agreement, and extensions of both. Def.s' Ex. A; Def.s' Ex. B.[3] Following the filing of the Amended Counterclaim, it continued to be the plaintiff's view that the Amended Counterclaim was deficient. See Pl.'s Reply; Plaintiff's Sur-Sur-Reply (Doc. No. 74) ("Pl.'s Sur-Sur-Reply"). Because the parties have had the opportunity to present their arguments about

---

[3] Because the counterclaim relies on versions of the Interim Defense Funding Agreement and Tolling and Non-Waiver Agreement, the court will consider both in deciding the instant Motion. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002); NovaFund Advisors, LLC v. Capitala Grp., LLC, No. 3:18-CV-1023 (MPS), 2020 WL 230089, at *3 (D. Conn. Jan. 14, 2020) (considering documents referred to and relied on in the defendant's counterclaim).

the adequacy, or inadequacy, of the Amended Counterclaim, the court will treat the plaintiff's Motion to Dismiss Counterclaim as a Motion to Dismiss Amended Counterclaim.

## III. LEGAL STANDARD

"The analysis of a motion to dismiss for failure to state a claim is equivalent for claims and counterclaims." ARMOUR Cap. Mgmt. LP v. SS&C Techs., Inc., No. 3:17-CV-00790 (JAM), 2019 WL 688308, at *2 (D. Conn. Feb. 19, 2019). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Reviewing a motion to dismiss under Rule 12(b)(6), the court liberally construes the counterclaims, accepts the factual allegations in a Counterclaim as true, and draws all reasonable inferences in the nonmovant's favor. See La Liberte v. Reid, 966 F.3d 79, 85 (2d Cir. 2020). However, the court does not credit legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678.

## IV. DISCUSSION

The Insurers seek declaratory relief under the First, Third, and Fourth Counts of the Amended Counterclaim, and bring counterclaims for breach of contract and reimbursement under the Second and Fifth Counts of the same. See Am. Countercl. Colt's moves to dismiss all of the Insurers' amended counterclaims. See Mot. Dismiss.

4

A.      Counts One, Three, and Four: Declaratory Judgment

Colt's moves to dismiss Counts One, Three, and Four of the Insurers' Amended Counterclaim because, according to Colt's, they are redundant as they mirror the claims raised in Colt's Amended Complaint and restate the Insurers' defenses. Pl.'s Mem. at 20–21; Pl.'s Reply at 7–8. Colt's further argues that it would be prejudiced if the court declines to dismiss these counterclaims. Pl.'s Reply at 9. In opposition, the Insurers argue that their amended counterclaims for declaratory relief are not redundant; in fact, according to the Insurers, Colt's claims for declaratory relief are narrower in scope than the declaratory relief sought by the Insurers. Def.s' Opp'n at 23–26.

The "permissive language" of the Declaratory Judgment Act confers "a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory judgment action that they would otherwise be empowered to hear." Dow Jones & Co. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003). Thus, "[a] counterclaim seeking a declaratory judgment may be dismissed if it is duplicative of the counterclaimants' affirmative defenses, does not broaden the scope of the dispute, or would not present a live controversy once the plaintiffs' claims have been resolved on the merits." Grey Wall Software, LLC v. AeroSimple LLC, No. 3:22-CV-203 (RAR), 2023 WL 5802621, at *4 (D. Conn. Sept. 7, 2023) (internal quotation marks omitted). Indeed, "[t]he fact that a declaratory judgment may be appropriate in a particular insurance situation does not mean that the court must entertain the action." Wright & Miller, 10B Fed. Prac. & Proc. Civ. § 2760 (4th ed. 2024).

1. Count One: Declaratory Judgment as to the Defense Funding Agreement

In their Twenty-Fifth Defense, the Insurers assert that coverage for the Gary Lawsuit is barred by the Interim Defense Funding Agreement. Answer, Twenty-Fifth Defense. The Insurers also seek a declaratory judgment that the Interim Defense Funding Agreement governs the parties' obligations as to the Gary Lawsuit and that, as a result, Colt's is required to pay certain defense expenses, to the extent they are incurred, each year from 2005 to present. Am. Countercl. at ¶ 49.

Count One of the Insurers' Amended Counterclaim is duplicative of the Twenty-Fifth Defense. To the extent the court considers whether the coverage sought by Colt's is barred under the Interim Defense Funding Agreement, as claimed by the Insurers' Twenty-Fifth defense, it must consider the issues raised by Count One of the Insurer's Counterclaim, those issues being: whether the Interim Defense Funding Agreement is operative and, if so, what is required of the parties. <u>Compare</u> Answer, Twenty-Fifth Defense (asserting that Colt's claim "may be barred and / or released, in whole or in part, by the terms and conditions of the [Interim] Defense Funding Agreement"); <u>with</u> Am. Countercl., Count I (seeking declaratory relief that the same agreement "remains in full force and governs the parties' obligations to pay defense expenses relative to the Gary Lawsuit"). Accordingly, having concluded that the issues raised in Count One of the Insurers' Amended Counterclaim are duplicative of their Twenty-Fifth Defense, the court grants Colt's Motion to Dismiss Count One of the Insurers' Amended Counterclaim.

6

### 2. Count Three: Declaratory Judgment as to Attachment

Count Three of the Amended Counterclaim is redundant because the declaratory relief sought by the Insurers implicates the same issues raised by the Insurers' defenses. In Count Three, the Insurers seek a declaratory judgment that, if the Interim Defense Funding Agreement was terminated, the Insurers' obligation to pay under the agreement was also terminated. See Am. Countercl. at ¶ 74. Further, the Insurers seek a declaratory judgment that any obligation to pay expenses from the Gary Lawsuit is dependent on Colt's first satisfying certain of its alleged payment obligations. Id. The Insurers Third and Twenty-Fifth Defenses raise the same issues. Compare id.; with Answer, Third Defense (maintaining that, to the extent the Insurers are liable for litigation costs, liability is triggered only after Colt's satisfies its payment obligations); Answer, Twenty-Fifth Defense (asserting that the Insurers are "released, in whole or in part" from responsibility for litigation costs under the Interim Defense Funding Agreement). Having concluded that the issues raised in Count Three of the Amended Counterclaim are duplicative of the Insurers' defenses, the court grants Colt's Motion to dismiss this amended counterclaim.

### 3. Count Four: Declaratory Judgment as to Coverage

Finally, and for similar reasons as already discussed, Count Four of the Insurers' Amended Counterclaim is duplicative of arguments raised in their defenses and is subsumed by Colt's Amended Complaint. Under Count Four, the Insurers seek a declaratory judgement that the policies at issue do not require the Insurers to cover costs arising from the Gary Lawsuit. See Am. Countercl., Count IV. The Insurers advance similar arguments in their affirmative defenses. See, e.g., Answer, Ninth Defense ("[The] [p]laintiff's claims for coverage for the Gary Lawsuit may be barred, in

whole or in part, by the applicable terms, conditions, provisions, clauses, definitions, exclusions, limitations and/or endorsements contained in the Policies."). Equally as important, this counterclaim is essentially a negation of claims asserted in Colt's Amended Complaint. See Am. Compl., Count II, V. The court, therefore, grants Colt's Motion to Dismiss Count Four of the Amended Counterclaim.

    B.    <u>Count Two: Breach of Contract</u>

Colt's moves to dismiss Count Two of the Amended Counterclaim, arguing that the Tolling and Non-Waiver Agreement does not apply to the Interim Defense Funding Agreement and thus, the Insurers' breach of contract claim is barred by the statute of limitations. Pl.'s Mem. at 15–17; Pl.'s Reply at 5–6. Additionally, Colt's maintains that the allegations contained in the amended breach of contract counterclaim fail to state a plausible claim for relief. Pl.'s Mem. at 12–14; Pl.'s Reply at 3–4; Pl.'s Sur-Sur Reply at 1–3. The Insurers oppose both arguments. Def.s' Opp'n at 13–20; Def.s' Sur-Reply at 2–5.

    1.    Applicability of Tolling Agreement

To determine whether, as Colt's argues, the Insurers' amended breach of contract counterclaim is barred by the statute of limitations, the court must interpret the Tolling and Non-Waiver Agreement and Interim Defense Funding Agreement. Though these contracts may not themselves be insurance policies, even if they were, the court would interpret the provisions using the same principles that govern the interpretation of any contract. <u>Karas v. Liberty Ins. Corp.</u>, 335 Conn. 62, 73 (2019). The court must view the language used in the contract in its entirety, "with each provision read in light of the other provisions and every provision must be given effect if it is possible to do so." <u>Nation-Bailey v. Bailey</u>, 316 Conn. 182, 192 (2015). If the terms of the contract are

8

clear and unambiguous, the court will enforce them in keeping with their ordinary meaning.  Karas, 335 Conn. at 73.  If the language at issue is "susceptible to more than one reasonable interpretation, the contract is ambiguous."  Nation-Bailey, 316 Conn. at 192.  "Any contractual ambiguities should be resolved in favor of the [non-movant] at the motion to dismiss stage."  Lopez v. Lando Resorts Corp., No. 3:14-CV-1609 (JCH), 2015 WL 3473894, at *2 (D. Conn. June 2, 2015) (citing Subaru Distributors Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005)).[4]

Pursuant to section 52-576 of the General Statutes of Connecticut, a breach of contract claim must ordinarily be brought under Connecticut law within six years of the accrual of the right of action.[5]  Contracting parties may, however, form a tolling agreement that governs how the passage of time is to be calculated.  E.g., Vigilant Ins. Co. v. Deloitte & Touche, LLP, No. X07 CV 07 5012262 S, 2008 WL 2582701, at *4 (Conn. Super. Ct. June 12, 2008) (concluding that the plaintiff filed a complaint within the six-year statute of limitations period when calculated using the parties' tolling agreement).

Colt's and the Insurers dispute whether the Tolling and Non-Waiver Agreement applies to the contract that the Insurers claimed was breached, the Interim Defense Funding Agreement.  According to Colt's, the Tolling and Non-Waiver Agreement

---

[4] The court is aware that, under Connecticut law, ambiguities in insurance policies are to be interpreted against the insurer.  Holy Trinity Church of God In Christ v. Aetna Cas. & Sur. Co., 214 Conn. 216, 223 n. 5 (1990) ("Although ambiguities are to be construed against the insurer, when the language is plain, no such construction is to be applied." (internal quotation marks omitted)).  Even if this rule applied to the court's analysis of the Interim Defense Funding Agreement and Tolling and Non-Waiver Agreement, it would not alter the court's disposition of the instant Motion.

[5] The statute reads, in part, "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues, except as provided in subsection (b) of this section."  Conn. Gen. Stat. Ann. § 52-576.

pertains to disputes about coverage under insurance policies, not under the Interim Defense Funding Agreement.  Pl.'s Mem. at 17; Pl.'s Reply at 5.  The Insurers, by contrast, argue that Paragraph 8 of the Interim Defense Funding Agreement incorporates the Tolling and Non-Waiver Agreement and, therefore, they timely filed the amended breach of contract counterclaim.  Def.s' Opp'n at 18–19.

Paragraph 8 of the Tolling Agreement reads,

> The Companies and Colt's agree that the time period from [October 1, 2006], through the Termination Date, will not be included in computing the time prescribed for asserting any rights or claims available to Colt's or any defenses, rights, reservations or limitations to coverage available to the Companies or the commencement or a civil action asserting claims referred to in paragraph 1 under any statute of limitations that may apply to such action, nor will the time period be considered with respect to the foregoing for any defense of laches or similar defense concerning timeliness.

Def.s' Ex. B, Tolling and Non-Waiver Agreement at AIG000014 ¶ 8.[6]  Paragraph 8(b) of the Interim Defense Funding Agreement, as replaced by paragraph 3(b) of the Fourth Amendment to and Extension of Interim Defense Funding Agreement, reads,

> All payments by AISLIC of Defense Expenses which were incurred on or after the date of this Fourth Amendment and Extension Agreement, will be without prejudice and pursuant to a bilateral tolling and non-waiver agreement executed by the parties concurrently herewith. The tolling and non-waiver agreement will extend to all companies affiliated with the American International Companies and will include an express reservation of the right to deny any obligation to defend and or indemnify Colt's with respect to the Firearms Litigation except as provided by this Agreement.

Def.s' Ex. A, Fourth Amendment to and Extension of Interim Defense Funding Agreement at AIG000028 ¶ 3(b).  The revised paragraph 8(b) unambiguously provides that all payments incurred on or after the date of the Fourth Amendment to and

---

[6] The Tolling and Non-Waiver Agreement was updated several times, the last update, made via the Fourth Amendment and Extension of Tolling and Non-Waiver Agreement, excluded the time period from October 1, 2006 to the Termination Date.  Def.s' Ex. B, Fourth Amendment and Extension of Tolling and Non-Waiver Agreement at AIG 000026.

Extension of Interim Defense Funding Agreement, December 6, 2005, are made "pursuant to a bilateral tolling . . . agreement." Id. The amended Tolling and Non-Waiver Agreement extends to "any . . . rights" that the Insurers may wish to pursue in connection with payments made on or after October 1, 2006, under the Interim Defense Funding Agreement. Def.s' Ex. B, Tolling and Non-Waiver Agreement at AIG000014 ¶ 8; Def.s' Ex. B, Fourth Amendment and Extension of Tolling and Non-Waiver Agreement at AIG000026. Taken together, the court concludes that the Tolling and Non-Waiver Agreement unambiguously extends to payments made under the Interim Defense Funding Agreement.

The court agrees with the Insurers that the Tolling and Non-Waiver Agreement was incorporated into the Interim Defense Funding Agreement and, as a result, the amended breach of contract counterclaim is timely. Accordingly, the Insurers' amended counterclaim for breach of contract under the Interim Defense Funding Agreement is timely if the counterclaim was filed within six years of the termination of the Tolling and Non-Waiver Agreement. The parties dispute whether the Tolling and Non-Waiver Agreement has been terminated. Compare Pl.'s Mem. at 7 (Agreement terminated July 31, 2023); with Def.s' Opp'n at 20 n. 15 (disputing termination of the Agreement). Even assuming, as Colt's argues, that it terminated the Tolling Agreement on July 31, 2023, the Insurers amended breach of contract counterclaim would still be timely filed under the the agreements just discussed.

    2.    Sufficiency of Breach of Contract Allegations

In Connecticut, a breach of contract claim must allege four elements: (1) formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other party; and (4) damages. Meyers v. Livingston, Adler, Pulda, Meiklejohn &

Kelly, P.C., 311 Conn. 282, 291 (2014).  Colt's argues that the Insurers have not adequately pled the third and fourth elements of a breach of contract claim.  See Pl.'s Mem. at 12–14; Pl.'s Reply at 3–4; Pl.'s Sur-Sur-Reply at 1–3.[7]  Regarding the third element, Colt's maintains the Amended Counterclaim fails to allege facts plausibly raising the inference that Colt's breached the Interim Defense Funding Agreement.  Pl.'s Mem. at 12.  According to Colt's, Count Two of the Amended Counterclaim fails to correct this defect.  See Pl.'s Reply at 4.

Contrary to Colt's assertions, the Insurers have plausibly alleged that Colt's breached the Agreement at issue.  The Amended Counterclaim includes allegations that Colt's was obligated to pay the first $250,000 in litigation expenses arising each year from 2005 to present.  Am. Countercl. at ¶¶ 39, 49(b)–50.  The Insurers further allege that information shared by Colt's in January 2024 shows that Colt's did not incur expenses stemming from the Gary Lawsuit in excess of $250,000 in 2021, 2022, or 2023.  Id. at ¶ 60.  Nonetheless, the Insurers allegedly paid for Gary Lawsuit expenses submitted to them in 2022.  Id. at ¶ 58 ("AISLIC authorized payment of over $86,000 in defense expenses submitted between 2017 and 2022 from . . . monies held in trust.").  Though the Amended Counterclaim includes additional allegations about payments made by the Insurers and Colt's failure to pay, the allegations just described are sufficient to plausibly allege the third element of a breach of contract claim.  Colt's allegedly had a duty to perform, i.e., to pay some portion of Gary Lawsuit expenses

---

[7] Colt's initially argued that the Counterclaim failed to allege the Insurers performed their obligations under the contract at issue.  Pl.'s Mem. at 14–15.  After the Insurers filed their Amended Counterclaim, Colt's argued "[t]he allegations of [the] [d]efendants' [A]mended [C]ounterclaim fail to satisfy at least the third and fourth elements" of a breach of contract claim.  Pl.'s Reply at 4.  To the extent Colt's intended to argue the Insurers' Amended Counterclaim fails to satisfy the second element of its breach of contract claim, the court disagrees.  See Am. Countercl. at ¶¶ 52–54, 57–58.

each year, to the extent such expenses are incurred, but failed to do so when the time for performance became due. See Restatement (Second) of Contracts § 235 (1981) ("Non-performance of a duty when performance is due is a breach whether the duty is imposed by a promise stated in the agreement or by a term supplied by the court[.]"). Because the court has concluded that the Insurers have alleged facts sufficient to satisfy the third element of a breach of contract claim, it need not consider the parties' arguments about the sufficiency, or insufficiency, of other factual allegations to the extent those allegations relate to breach.

      Colt's next argues that Count Two of the Amended Counterclaim fails to allege facts that plausibly suggest the Insurers incurred damages as a result of any breach, thus failing to satisfy the fourth element of a breach of contract claim. Pl.'s Reply at 3–4. In Colt's view, the "allegations that Colt's failed to pay its own defense expenses do not establish any damages" because the consequences of any failure to pay "would be suffered only by Colt's defense counsel and vendors." Id. at 4. Colt's reading of the amended breach of contract counterclaim is incomplete, however, because the Insurers allege that AISLIC paid defense expenses it had not promised to pay and that should have been paid by Colt's. Am. Countercl. at ¶ 67. Under Connecticut law, these allegations go to damages because "a party may recover general contract damages for any loss that may fairly and reasonably be considered as arising naturally . . . from [a] . . . breach of contract[.]" Torosyan v. Boehringer Ingelheim Pharms., Inc., 234 Conn. 1, 32 (1995). Accordingly, the Insurers' breach of contract claim includes allegations that go to the element of damages.

The court concludes that Count Two of the Insurers' Amended Counterclaim is not barred by the statute of limitations at issue and alleges facts sufficient to state a claim for breach of contract. The plaintiff's Motion is denied to the extent it seeks to dismiss the Insurers' amended breach of contract counterclaim.

C.     Count Five: Reimbursement

According to Colt's, the Insurers' amended counterclaim for reimbursement, formerly styled as a counterclaim for recoupment, should be dismissed because: (1) the Insurers failed to reserve the right to seek recovery from Colt's under the Tolling and Non-Waiver Agreement; (2) the amended counterclaim is actually a claim for recoupment, even though it has been restyled as a claim for reimbursement, and such a claim may not be brought when, as here, a defendant seeks to recover an amount greater than the amount sought by a plaintiff; and (3) the amended counterclaim does not include allegations about what the Insurers are entitled to recoup. Pl.'s Mem. at 18–19; Pl.'s Reply at 6–7. The court considers each argument in turn, and addresses Colt's second and third arguments together.

1.     Reservation of Rights

The parties dispute the interpretation of the Fourth Amendment to and Extension of Interim Defense Funding Agreement. Colt's relies on paragraph 8(c) of the Interim Defense Funding Agreement, as amended by paragraph 3(c) of the Fourth Amendment to and Extension of Interim Defense Funding Agreement. See Pl.'s Reply at 6. Under the amended paragraph, nothing in the Interim Defense Funding Agreement was to "alter the rights of the parties for cost[-]sharing" and AISLIC "reserve[d] the right to seek recovery of Defense Expenses." Ex. A, Fourth Amendment to and Extension of Interim Defense Funding Agreement at AIG000028 ¶ 3(c). Colt's reads this provision to

14

suggest that AISLIC only reserved the right to seek recovery from other insurance companies, not from Colt's. Pl.'s Reply at 6. The Insurers, by contrast, rely on paragraph 8(b) of the Interim Defense Funding Agreement, as amended by section 3(b) of the Fourth Amendment to and Extension of Interim Defense Funding Agreement, and paragraph 2 of the Tolling and Non-Waiver Agreement to argue that they may bring a claim for reimbursement. Def.s' Sur-Reply at 5–6.

As already described, see, supra, part IV.B.1, the Tolling and Non-Waiver Agreement was incorporated into the Interim Defense Funding Agreement. The Tolling and Non-Waiver Agreement provides, in part, that no party may be "estopped . . . from seeking reimbursement of defense expenses." Ex. B, Tolling and Non-Waiver Agreement at AIG000012–13 ¶ 2. The parties defined "defense expenses" to "include the reasonable counsel fees incurred by Colt's in connection with the defense of the Firearms Litigation and other litigation expenses . . . directly attributable to the Firearms Litigation." Ex. A, Interim Defense Funding Agreement at AIG000016 ¶ 1. According to the same agreement, "Firearms Litigation" include lawsuits brought against Colt's by local governments, which presumably includes the Gary Lawsuit. See id at AIG000016. Considering these provisions together, the court concludes that the Insurers reserved the right to bring an action against Colt's seeking reimbursement of defense expenses they paid under the Interim Defense Funding Agreement.

### 2. Sufficiency of Reimbursement Allegations

Next, Colt's argues the Insurers' amended counterclaim for reimbursement fails to allege facts sufficient to raise a plausible counterclaim for relief. Colt's appears to argue that, although the counterclaim, as amended, seeks reimbursement, it remains a

counterclaim for recoupment. See Pl.'s Reply at 6–7.[8] As such, the amended counterclaim is deficient, according to Colt's, because a claim for recoupment cannot be used when, as here, the defendant seeks greater damages than those sought by the plaintiff. Pl.'s Mem. at 18. Instead, Colt's maintains that a claim for recoupment is cognizable only when a defendant seeks to diminish the sum sought by a plaintiff. Id. Colt's also argues that the amended counterclaim fails to allege what, specifically, the Insurers seek to recoup from Colt's. Id. at 19. In response, the Insurers argue that the counterclaim at issue was always intended to seek reimbursement rather than recoupment, and the court should treat it as such. Def.s' Opp'n at 21. Further, the Insurers maintain that the amended counterclaim for reimbursement is adequately pled. Id. at 21–22.

In keeping with the styling of the Amended Counterclaim and the Insurers' treatment of the same in its Opposition, Am. Countercl., Count V; Def.s' Opp'n at 21–23; see Def.s' Sur-Reply at 5, the court will treat the Amended Counterclaim as seeking reimbursement rather than recoupment.

Under Connecticut law, "[a] cause of action for reimbursement is cognizable to the extent required to ensure that the insured not reap a benefit for which it has not paid and thus be unjustly enriched." Sec. Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co., 264 Conn. 688, 717 (2003). Courts will award reimbursement "where the insurer defends the insured against an action that includes claims not even potentially covered

---

[8] The court assumes Colt's continues to view the defendants' amended counterclaim for reimbursement as a claim for recoupment because Colt's Reply, filed after the defendants filed their amended counterclaims, maintains that the defendants "fail to resolve the pleading defects identified in Colt's moving papers[.]" Pl.'s Reply at 7. The relevant "pleading defects" that Colt's identified in its Memorandum go to the supposed inadequacy of the defendants' counterclaim for recoupment. See Pl.'s Mem. at 17–19.

16

by the insurance policy[.]" Id.  An insurer seeking reimbursement from an insured must allege that the insurer defended the action at issue, and there was no potential that the claim, or claims, at issue may have been covered by the policy.  See id.; Nationwide Mut. Ins. Co. v. Mortensen, No. 3:00-CV-1180 (CFD), 2011 WL 2881314, at *1 (D. Conn. July 18, 2011) (explaining that the insured was not required to reimburse the insurer because there was "at least [the] potential" that the policy could be understood to require the insurer to defend the insured).  A liberal construction of the alleged facts suggest that the Insurers have sufficiently pled their amended counterclaim for reimbursement.  The Insurers allege that they defended the Gary Lawsuit, Am. Countercl. at ¶¶ 53, 82, and maintain that the lawsuit was not covered by the policies. Id. at ¶ 84.

Colt's asserts that Lumbermens, the Connecticut Supreme Court case that found insurers may seek reimbursement in some instances, is inapplicable to this case because in Lumbermens the insurers fully defended the insured, whereas here, the Insurers allegedly refused to fully defend Colt's.  Pl.'s Reply at 6–7.  In this court's view, it is not significant that the Insurers may have only partially defended Colt's.  This is because the Lumbermens opinion provides insurers may seek reimbursement from insureds "to the extent required to insure that the insured not reap a benefit for which it has not paid[.]"  264 Conn. at 717.  The Lumbermens court explained: "'The "enrichment" of the insured by the insurer through the insurer's bearing of unbargained-for defense costs is inconsistent with the insurer's freedom under the policy and therefore must be deemed "unjust."'"  Id. (quoting Buss v. Superior Court, 16 Cal.4th 35, 50–51 (1997)).  In keeping with Lumbermens, the Insurers argue that they were not

17

required to defend the Gary Lawsuit at all, having paid to defend some portion of the litigation, the Insurers may now claim that they are entitled to reimbursement because the payments were never required under the policies at issue.

Having concluded that the amended counterclaim for reimbursement is sufficiently pled and may be brought under the agreements at issue, Colt's Motion is denied to the extent it moves to dismiss the Insurers' amended reimbursement counterclaim.

## V.     CONCLUSION

For the reasons stated above, the court grants in part and denies in part the plaintiff's Motion to Dismiss Counterclaims (Doc. No. 49). The Motion is granted as to Counts One, Three, and Four of the Amended Counterclaim and is denied as to Counts Two and Five of the Amended Counterclaim.

**SO ORDERED.**

Dated at New Haven, Connecticut this 27th day of January 2025.

      /s/ Janet C. Hall
Janet C. Hall
United States District Judge