**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| COLT'S MANUFACTURING COMPANY, LLC, | : | CIVIL CASE NO. |
| | : | 3:23-CV-01156 (JCH) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| AMERICAN INTERNATIONAL | : | JUNE 25, 2025 |
| SPECIALTY LINES | : | |
| INSURANCE COMPANY, | : | |
| NATIONAL UNION FIRE | : | |
| INSURANCE COMPANY OF | : | |
| PITTSBURGH, PA, | : | |
|     Defendants. | : | |

**RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 85)**
**AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 86)**

i

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................ 1

II.    BACKGROUND ........................................................................................... 2

    A.    Factual Background: Defendants' Motion for Summary Judgment ........... 2

        1.    Insurance Policy .......................................................................... 2

        2.    Interim Defense Funding Agreement and Tolling and Non-Waiver
              Agreement ................................................................................. 5

        3.    Events Following the Interim Agreements ...................................... 7

    B.    Factual Background: Plaintiff's Motion for Summary Judgment ............... 8

        1.    Insurance Policy .......................................................................... 8

        2.    Interim Defense Funding Agreement and Tolling and Non-Waiver
              Agreement ................................................................................. 9

        3.    Events Following the Interim Agreements ..................................... 10

    C.    Procedural Background ........................................................................... 12

III.    LEGAL STANDARD ...................................................................................... 13

IV.    DISCUSSION ................................................................................................ 14

    A.    The Insurers' Motion for Summary Judgment ........................................ 15

        1.    Whether the Policy, or Interim Defense Funding Agreement
              controls. ................................................................................. 15

        2.    Whether Colt's terminated the Fourth Interim Defense Funding
              Agreement. ............................................................................... 21

        3.    Whether either party breached the Fourth Interim Defense Funding
              Agreement ................................................................................. 23

            a.    Colt's purported failure to pay defense expenses .............. 24

            b.    The Insurers May 28, 2021, letter to Colt's ........................ 30

            c.    Colt's filing of the instant lawsuit .................................... 31

        4.    Whether Colt's bad faith claims fail as a matter of law ................. 31

        5.    Whether Colt's claims against National Union Fail as a matter of
              law ........................................................................................... 34

B.    Colt's Motion for Summary Judgment ....................................................... 37

　　　1.    Whether the Insurers' have a duty to defend Colt's under the
　　　　　　Insurance Policy. ............................................................................. 38

　　　2.    Whether the Insurers acted in bad faith. ......................................... 39

　　　3.    Whether the Insurers' breach of contract counterclaim fails.......... 39

　　　4.    Whether the Insurers' reimbursement counterclaim fail as a matter
　　　　　　of law or fact. ................................................................................. 41

V.    CONCLUSION.................................................................................................. 42

I.    **INTRODUCTION**

The plaintiff, Colt's Manufacturing Company, LLC ("Colt's"), brings this action against American International Specialty Lines Insurance Company ("AISLIC") and National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") asserting breach of contract and bad faith, and seeking declaratory relief.  See Amended Complaint ("Am. Compl.") (Doc. No. 36).  AISLIC and National Union (collectively, "the Insurers") assert two remaining counterclaims: breach of contract and reimbursement.  See Second Answer Am. Compl.; Amended Counterclaim. ("Am. Countercl.") (Doc. No. 54).

Before the court is the plaintiff's Motion for Summary Judgment.  See Plaintiff's Motion to Summary Judgment ("Pl.'s Mot.") (Doc. No. 85); Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Pl.'s Mem.") (Doc. No. 85-1); Plaintiff's Reply in Support of Motion for Summary Judgment ("Pl.'s Reply") (Doc No. 90).  Also before the court is the defendants' Motion for Summary Judgment.  See Defendant's Motion for Summary Judgment ("Def.s' Mot.") (Doc No. 86); Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.s' Mem.") (Doc. No. 86-1); Defendant's Reply in Support of Motion for Summary Judgment ("Def.s' Reply") (Doc. No. 89).  The parties oppose the Motions, respectively.  Defendants' Opposition to Plaintiff's Motion for Summary Judgment ("Def.s' Opp'n") (Doc. No. 87); Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp'n") (Doc. No. 88).

For the reasons that follow, the defendants' Motion is granted in part and denied in part, and the plaintiff's Motion is denied.

1

## II.    BACKGROUND[1, 2]

### A.    Factual Background: Defendants' Motion for Summary Judgment

#### 1.    Insurance Policy

Colt's entered into two separate insurance policies with the defendants.  One policy, effective from December 1, 1998, to December 1, 1999, was provided by National Union and offered commercial general liability coverage.  Pl.'s 56(a)(2) Stmt. at ¶ 12.  This policy was itself a renewal of prior policies offered by National Union.  Def.s' 56(a)(1) Stmt. at ¶ 12.[3]  AISLIC issued Colt's another insurance policy, the one at issue in this litigation.  The policy was effective from December 1, 1998, to December 1, 1999, and was policy number GLCM 457-04-11 RA ("the Insurance Policy" or "the Policy").  Id.

---

[1] As it must, the court construes all disputed facts in the light most favorable to the non-moving party.  It notes where the parties disagree.

Addressed in this Ruling are cross motions: thus, there are two non-moving parties.  The court sought to carefully review the record to determine the undisputed facts to be relied on in deciding each motion.  Where a denial is unsupported by the evidence, the court deems the moving party's factual assertion admitted to the extent it is supported by admissible evidence.  If evidence supports the opposing party's denial of a material fact, it will not be treated as established.

The court draws primarily from the parties' Local Rule 56(a) Statements in summarizing the material facts.  In addition, for ease of reference, the court cites to the parties' Local Rule 56(a)(2) Statements where the parties agree because, in accordance with Local Rule 56(a)(2), they contain a reproduction of each numbered paragraph from the moving party's Local Rule 56(a)(1) Statement, as well as the nonmoving party's admissions and denials.

[2] Both Colt's and the Insurers replied to the other party's Local Rule 56(a)(2) Statement.  See Plaintiff's Reply to Defendants' 56(a)(2) Statement (Doc. No. 90-1); Defendants' Reply to Plaintiff's 56(a)(2) Statement (Doc. No. 89-1).  However, the Local Rules do not provide for replies to 56(a)(2) Statements, and the court will not consider them.  See Jones v. Sansom, No. 3:21-CV-442 (VAB), 2023 WL 1069487, at *1 n. 1 (D. Conn. Jan. 27, 2023); Local Rule 56.

[3] While Colt's does not expressly admit this assertion, Colt's also does not deny it.  See Pl.'s 56(a)(2) Stmt. at ¶ 12.  Accordingly, the court deems it admitted.  See Local Rule 56(3).

at ¶ 1.[4]   Colt's was in poor financial health at the time it entered into these policies, Pl.'s 56(a)(2) Stmt. at ¶ 15, and splitting the policies in this manner was financially advantageous to Colt's.  Def.s' 56(a)(1) Stmt. at ¶ 16.[5]   Doing so allowed Colt's to insure low-risk portions of its business less expensively through the National Union policy and more expensive high-risk portions of its business through the AISLIC policy. Id.[6]   The policy at issue in this litigation is the latter policy, issued by AISLIC.

According to the Insurers, the Policy contained an endorsement, Endorsement #C, which modified the Products/Completed Operations Liability Coverage Form.  Id. at ¶ 18.  Endorsement #C, according to the Insurers, established a Self-Insured Retention ("SIR"), meaning AISLIC would cover claims under the Policy only after Colt's paid a $250,000 Retained Limit, provided the claim did not exceed  $1-million per occurrence or $2-million in aggregate.  Id. at ¶ 2.  According to the Insurers, the SIR Endorsement included the following provision:

> We will pay on behalf of the Insured those sums, in excess of the "Retained Limit", subject to the terms and conditions set forth in this endorsement, that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage", to which this insurance applies. We will have the right but not the duty to defend any "suit" seeking those damages.

Id. at ¶ 18 (citing O'Rourke Aff., Ex. E at AIG000063).  Colt's denies the Policy contained any SIR endorsement like the one described by the Insurers, noting the

---

[4] Colt's objects to this assertion.  Pl.'s 56(a)(2) Stmt. at ¶ 1.  However, the evidence cited by Colt's does not support its objection to the fact that a policy was issued bearing the policy number and dates described.  See id.  The court deems the assertion at issue admitted.  See Local Rule 56(3).

[5] While Colt's does not expressly admit this assertion, Colt's also does not deny it.  See Pl.'s 56(a)(2) Stmt. at ¶ 16.  Accordingly, the court deems it admitted.  See Local Rule 56(3).

[6] The court deems this assertion admitted.  See, supra, n. 4.

version of the Policy in Colt's files, what it calls the "Archive Policy," does not contain

such an endorsement.  Pl.'s 56(a)(2) Stmt. at ¶¶ 1–2, 4, 18.  The Insurers observe

Endorsement #C refers to a Commercial General Liability Coverage Form, though the

Policy at issue contains a Products/Completed Operations Liability Coverage Form.

See Def.s' 56(a)(1) Stmt. at ¶ 23.  The Insurers categorize this as a scrivener's error,

while Colt's characterizes the reference to Commercial General Liability Coverage Form

not as an error but as an indication that Endorsement #C is not a part of the Policy at

issue.  Compare id.; with Pl.'s 56(a)(2) Stmt. at ¶ 23.

The Insurers claim Colt's specifically sought a policy with a large SIR; the court's

review of the evidence cited by the Insurers does not support this proposition, however.

Def.s' 56(a)(1) Stmt. at ¶ 4.  The Insurers further claim Colt's knew of the SIR

Endorsement.  Id.  Colt's admits only that Carlton Chen ("Mr. Chen"), Colt's former

General Counsel, testified during his deposition that he recalled the Policy contained a

$250,000 SIR, but Colt's denies that it had knowledge of this SIR or that the SIR was a

part of the Policy.  Pl.'s 56(a)(2) Stmt. at ¶ 4.  The Insurers claim they shared the Policy

with Picton Cavanaugh, Colt's insurance broker, and asked Picton Cavanaugh to review

the Policy.  Def.s' 56(a)(1) Stmt. at ¶ 8.  Colt's denies this assertion, claiming that the

Insurers offer no admissible evidence to support it.  Pl.'s 56(a)(2) Stmt. at ¶ 8.  The court

deems the assertion that the Insurers shared the Policy with Picton Cavanaugh

admitted because, contrary to Colt's assertion, the Insurers do cite to admissible

documentary evidence suggesting the Insurers shared the Policy with Picton

Cavanaugh.  See Def.s' 56(a)(1) Stmt. at ¶ 8 (citing O'Rourke Aff., Exs. I and H).

4

The Insurers claim Picton Cavanaugh prepared a coverage summary of the Insurance Policy. Def.'s 56(a)(1) Stmt. at ¶ 10. The Insurers observe the document reads, in part, "[t]his summary highlights policy provisions thought to be of greatest interest. For a complete statement of these and other provisions the policy document must be consulted." Id. (quoting O'Rourke Aff., Ex. I at CM003726).[7] The Insurers assert further that the document refers to a "Self-Insured Retention" in the amount of $250,000 and an SIR Endorsement. Id. Colt's disputes that the document is a summary of the Policy at issue and that the SIR Endorsement highlighted in the document refers to the SIR Endorsement on which the Insurers rely, Endorsement #C. Pl.'s 56(a)(2) Stmt. at ¶ 10. The Insurers assert this summary was prepared in 1998, Def.' 56(a)(1) Stmt. at ¶ 10, Colt's denies this assertion as well. Pl.'s 56(a)(2) Stmt. at ¶ 10. Accordingly, for the purposes of the Insurers' Summary Judgment Motion, it is denied that the summary at issue is a summary of the Policy, and it is further denied that the summary was prepared in 1998.

      2.      Interim Defense Funding Agreement and Tolling and Non-Waiver Agreement

In August 1999, the City of Gary, Indiana filed a lawsuit (the "Gary Lawsuit") against Colt's, among other firearms manufacturers, alleging various tort claims and seeking, inter alia, money damages. Pl.'s 56(a)(2) Stmt. at ¶ 25. Colt's sought coverage pursuant to the Policy at issue. Id. at ¶ 27. However, because the parties could not agree about the application of the Policy, they entered into an Interim Defense

---

[7] The Insurers attribute this quotation to an Exhibit 7 and refer to the same bates number to which the court cites, CM003726. See Def.' 56(a)(1) Stmt. at ¶ 10. The court believes the Insurers' citation to Exhibit 7, which is Colt's response to the Insurers' interrogatories, is incorrect.

Funding Agreement ("First IDFA").  Def.s' 56(a)(1) Stmt. at ¶¶ 28–29.[8]  The First IDFA was extended four times, the last time being through the Fourth Interim Defense Funding Agreement ("Fourth IDFA").  See id. at ¶ 31.[9]  The Insurers maintain the Fourth IDFA amended the terms of the prior extension of the agreement.  Id.  While Colt's admits it received a copy of this agreement at a time unknown, it denies the Fourth IDFA amended prior versions of it.  Pl.'s 56(a)(2) Stmt. at ¶¶ 31, 35.  The Fourth IDFA was executed by Ray Campbell ("Mr. Campbell"), on behalf of the Insurers, and Carlton Chen, on behalf of Colt's.  Def.' 56(a)(1) Stmt. at ¶ 32.[10]

The parties agree the First IDFA referred to National Union rather than AISLIC.  Pl.'s 56(a)(2) Stmt. at ¶ 36.[11]  The Insurers claim reference to National Union was a

---

[8] Colt's does not expressly admit the parties disputed the effect of the policy and Colt's similarly does not admit the parties formed the IDFA; however, Colt's also does not deny either assertion.  See Pl.'s 56(a)(2) Stmt. at ¶¶ 28–29.  Accordingly, the court deems them admitted.  See Local Rule 56(3).

[9] Colt's denies this assertion; however, the evidence it cites in so doing does not support Colt's denial.  See Pl.'s 56(a)(2) Stmt. at ¶ 31.  In fact, Colt's denies that there was ever a "Fourth Interim Defense Funding Agreement."  Id. (citing Orin Decl., Ex. F at CM003330).  The document to which Colt's refers appears to be a letter sent by AIG to Colt's, the letter refers to the IDFA but does not refer to the Fourth IDFA.  See Orin Decl., Ex. F at CM003330.  However, nowhere does the cited portion of the document deny the existence of the Fourth IDFA.  Thus, the court deems as admitted that there was a Fourth IDFA.  See Local Rule 56(3).  Indeed, Colt's later admits in its 56(a)(2) Statement that it received a copy of the Fourth IDFA.  See Pl.'s 56(a)(2) Stmt. at ¶ 35.

[10] The Insurers periodically refer to the Fourth Amendment to and Extension of the Interim Defense Funding Agreement as the "Fourth DFA".  E.g., Def.' 56(a)(1) Stmt. at ¶ 31.  Colt's denies that a document titled the "Fourth DFA" ever existed, and on this basis denies that the parties executed the Fourth IDFA.  See Pl.'s 56(a)(2) Stmt. at ¶ 32.  In support of its denial, Colt's cites the Agreement at issue, which uses the unabbreviated title that the Insurers periodically abbreviate as "Fourth DFA."  See id. (citing Goldsmith Aff. Ex. E at CM003889).  The evidence cited by Colt's does not support its denial because Colt's and the Insurers refer to the same agreement, except the Insurers use an abbreviation to do so.  Accordingly, the court deems as admitted the Insurers' assertion that the parties jointly executed the Fourth IDFA, which is clearly what the Insurers refer to in its use of the abbreviation, "Fourth DFA."  See Local Rule 56(3).

[11] Colt's styles its 56(a)(2) Statement as a denial, but, in so doing, they implicitly admit that the IDFA referred to National Union.  See Pl.'s 56(a)(2) Stmt. at ¶ 36 ("Denied that the reference to National Union was incorrect or a mutual mistake[.]").

mistake.  Def.s' 56(a)(1) Stmt. at ¶ 36.  Colt's claims reference to National Union was proper because they, not AISLIC, "led the handling of Colt's defense" and paid defense expenses related to the same.  Pl.'s 56(a)(2) Stmt. at ¶ 36.

The parties agree that, at the same time they formed the First IDFA, they also entered into the Tolling and Non-Waiver Agreement.  See Pl.'s 56(a)(2) Stmt. at ¶ 30. The Tolling and Non-Waiver Agreement was also extended four times.  Def.s' 56(a)(1) Stmt. at ¶ 33.[12]

### 3.    Events Following the Interim Agreements

On May 28, 2021, AIG Claims, Inc. sent a letter, signed by Jeffery Goldsmith ("Mr. Goldsmith"), a Senior Analyst of AIG Claims, to Colt's.  Def.s' 56(a)(1) Stmt. at ¶ 54.  The Insurers assert that, at the time the letter was sent, Mr. Goldsmith was unaware of the existence of the Fourth IDFA.  Id.[13]  According to the Insurers, the letter states the position that the Insurers no longer had an obligation to pay defense expenses arising from the Gary Lawsuit.  Id.  Colt's asserts that the position expressed in the letter is somewhat different, that the Insurers were no longer obligated to pay defense expenses after the depletion of certain funds held in a trust.  Pl.'s 56(a)(2) Stmt. at ¶ 54.  The

---

[12] Colt's denies this assertion, arguing the documents to which the Insurers refer speak for themselves.  Pl.'s 56(a)(2) Stmt. at ¶ 33.  Having reviewed the documents cited by the Insurers, the court deems the assertion admitted.  See Def.s' 56(a)(1) Stmt. at 33 (citing Goldsmith Aff Ex. F at AIG000012–AIG000015, AIG000020, AIG000023–AIG000024, AIG000026).

[13] Colt's denies this assertion on the basis that there was no "Fourth DFA."  For the reasons already explained, supra, n. 5, Colt's denial is unavailing, and the court deems the Insurers' assertion admitted.

Insurers assert that, at the time of this letter, Mr. Goldsmith was unaware of the Fourth IDFA.  Def.s' 56(a)(1) Stmt. at ¶ 54.[14]

The parties agree that, through a letter dated July 31, 2023, Colt's sought to terminate the Tolling and Non-Waiver Agreement.  Pl.'s 56(a)(2) Stmt. at ¶ 41.[15]  The Insurers maintain Colt's failed to terminate the Tolling and Non-Waiver Agreement, while Colt's asserts it successfully terminated the Tolling and Non-Waiver Agreement.  Compare id.; with Def.s' 56(a)(1) Stmt. at ¶ 41.

    B.    Factual Background: Plaintiff's Motion for Summary Judgment

        1.    Insurance Policy

Colt's and AISLIC entered into the Insurance Policy at issue, which was effective from December 1, 1998 to December 1, 1999.  Def.s' 56(a)(2) Stmt. at ¶ 2.  Colt's maintains the Policy referred to only one coverage form: Products Liability/Completed Operations Liability.  Pl.'s 56(a)(1) Stmt. at ¶ 12.  The Insurers deny this assertion, claiming the Policy "comprised many forms" and directing the court to the Policy.  Def.s' 56(a)(2) Stmt. at ¶ 12 (citing O'Rourke Aff., Ex. E).  While it is true the Policy refers to various forms, see O'Rourke Aff., Ex. E at AIG000032, the only coverage form to which the Policy refers is Products Liability/Completed Operations Liability.  See id.  Further, the Insurers do not cite to a specific portion of the Policy that describes another

---

[14] Colt's does not deny this assertion; the court therefore deems it admitted.  See Pl.'s 56(a)(2) Stmt. at ¶ 54.

[15] Colt's denies the assertions made by the Insurers in paragraph 41 of the Insurers' 56(a)(1) Statement.  In denying certain of the Insurers' assertions, Colt's implicitly accepts that it sought to terminate the Tolling and Non-Waiver Agreement.  See Pl.'s 56(a)(2) Stmt. at ¶ 41.

coverage form.  See Def.s' 56(a)(2) Stmt. at ¶ 12 (citing O'Rourke Aff., Ex. E).

Accordingly, the court deems Colt's assertion admitted.

The Policy contained a provision providing that AISLIC "'will have the right and duty to defend the insured against any "suit" seeking [certain] damages.'"  Def.s' 56(a)(2) Stmt. at ¶ 3 (quoting Orin Decl., Ex. A at AIG006714).  This obligation ends when the insurance limit has been reached.  Id. at ¶ 4.  While the parties agree the Policy contained these provisions, the Insurers maintain the Policy included Endorsement #C, which reads, in part: "'We will have the right but not the duty to defend any "suit" seeking [certain] damages.'"  Id. (citing O'Rourke Aff., Ex. E at AIG000063).  The court agrees with Colt's observation that Endorsement #C provided it "'modifies insurance under the [following:] Commercial General Liability Coverage Form.'"  Pl.'s 56(a)(1) Stmt. at ¶ 11 (quoting O'Rourke Aff., Ex. E at AIG000061).[16]

> ### 2.    Interim Defense Funding Agreement and Tolling and Non-Waiver Agreement

Colt's notified the Insurers of the Gary Lawsuit.  Def.s' 56(a)(2) Stmt. at ¶ 18.

However, the Insurers maintained that they were not obligated to defend Colt's.  Id. at ¶ 19, 20. The basis of the Insurers' position was Endorsement #C, which provided that the Insurers had "the right but not the duty" to defend Colt's.  See Pl.'s 56(a)(1) Stmt. at ¶ 20.[17]

---

[16] The Insurers do not deny this assertion, the court therefore deems it admitted.  See Def.s' 56(a)(2) Stmt. at ¶ 11; Local Rule 56(3).

[17] While the Insurers dispute other assertions made by Colt's in paragraph 20 of its 56(a)(1) Statement, the Insurers do not deny that they invoked Endorsement #C as the basis for their position that they were not obligated to defend Colt's.  See Def.s' 56(a)(2) Stmt. at ¶ 20.  Accordingly, the court deems this assertion admitted.  See Local Rule 56(3).

The parties, being at an impasse about the degree to which each entity was responsible for defending Colt's from the Gary Lawsuit, formed the First IDFA.  Colt's asserts it and National Union executed the First IDFA on October 15, 1999.  Id. at ¶ 22.  The Insurers deny this assertion, claiming National Union was mistakenly referenced in the First IDFA, and that AISLIC was the real party in interest.  Def.s' 56(a)(2) Stmt. at ¶ 22.  Regardless of whether the reference to National Union was a mistake, it is indisputable that the First IDFA does reference National Union.  Pl.'s 56(a)(1) Stmt. at ¶ 22 (citing Orin Decl., Ex. J).  The court, therefore, deems it admitted that, pursuant to Colt's Local Rule 56(a)(1) Statement at paragraph 22, the First IDFA referenced National Union.

On the same day that certain of the parties executed the First IDFA, Colt's and National Union executed the Tolling and Non-Waiver Agreement.  Def.s' 56(a)(2) Stmt. at ¶ 24.  The Insurers observe further that, and the court agrees, also listed as signers of the Tolling and Non-Waiver Agreement are AISLIC and Granite State Insurance Company.  Id.; see Orin Decl., Ex. M at AIG005812.  Colt's maintains both the IDFA and Tolling and Non-Waiver Agreement were extended multiple times.  Pl.'s 56(a)(1) Stmt. at ¶ 25.  The Insurers assert the IDFA and Tolling and Non-Waiver Agreement were not only extended; they were also amended in 2005.  Def.s' 56(a)(2) Stmt. at ¶ 25.

   3. Events Following the Interim Agreements

According to Colt's, it has incurred legal fees, among other costs, as a result of defending itself in the Gary Lawsuit.  Pl.'s 56(a)(1) Stmt. at ¶ 33.  The Insurers admit only that Colt's has incurred costs since May 2021, but maintains Colt's annual defense expenses have not exceeded $250,000 since 2006.  Def.s' 56(a)(2) Stmt. at ¶ 33.

10

Indeed, the Insurers maintain they suffered damages because of Colt's failure to pay defense expenses.  See id. at ¶¶ 38–39.

The parties agree that Mr. Goldsmith sent a letter dated May 28, 2021, to John Coughlin, Colt's Senior Vice President and General Counsel.  See id. at ¶ 26.  Colt's claims the letter explained that it was the Insurers' position they were no longer required to pay for defense expenses arising from the Gary Lawsuit.  Pl.'s 56(a)(1) Stmt. at ¶ 27.  The Insurers deny this assertion, claiming it is misleading because at the time the letter was sent, the Insurers were unaware of the Fourth IDFA.  Def.s' 56(a)(2) Stmt. at ¶ 27.  Having reviewed the letter, the court disagrees with the Insurers that Colt's characterization of the letter is misleading; therefore, Colt's Local Rule 56(a)(2) Statement at paragraph 27 is admitted.

The parties agree that Mr. Coughlin responded to the letter, requesting copies of the various agreements mentioned therein.  Id. at ¶ 28.  The parties also agree that Mr. Goldsmith replied by sharing the First IDFA and Tolling and Non-Waiver Agreement, and the first two extensions of both agreements.  Id. at ¶ 29.  The parties agree further that the Insurers maintain they did not locate the Fourth IDFA until February 2024.  Id. at ¶ 30.  Colt's maintains it did not locate the Fourth IDFA in its own files until July 2024.  Pl.'s 56(a)(1) Stmt. at ¶ 31.[18]

Colt's asserts it terminated the Tolling and Non-Waiver Agreement through a letter dated July 31, 2023.  Id. at ¶ 32.  The Insurers deny this assertion, claiming that

---

[18] The Insurers do not deny this assertion; the court therefore deems it admitted.  See Def.s' 56(a)(2) Stmt. at ¶ 31; Local Rule 56(3).

the letter did not have the effect of terminating the Tolling and Non-Waiver Agreement. Def.s' 56(a)(2) Stmt. at ¶ 32.

      C.    <u>Procedural Background</u>

On August 31, 2023, Colt's initiated the instant lawsuit.  <u>See</u> Complaint (Doc. No. 1).  Colt's filed an Amended Complaint on March 26, 2024, asserting diversity jurisdiction pursuant to section 1332 of title 28 of the U.S. Code.  Am. Compl. at ¶ 7. Colt's is incorporated in Delaware with its principal place of business in Connecticut.  <u>Id.</u> at ¶ 4.  AISLIC and National Union are corporations of Illinois and Pennsylvania, respectively; both have their principal places of business in New York.  <u>Id.</u> at ¶¶ 5–6. Count One of the Amended Complaint seeks damages for AISLIC's alleged breach of the Insurance Policy.  <u>Id.</u> at ¶¶ 95–107.  Count Two seeks a declaratory judgment that AISLIC is obligated to defend Colt's in the Gary Lawsuit.  <u>Id.</u> at ¶¶ 108–117.  Count Three seeks damages for AISLIC's alleged bad faith in failing to fulfill its obligations to Colt's.  <u>Id.</u> at ¶¶ 118–131.  Counts Four through Six assert the same claims but against National Union instead of AISLIC.  <u>See id.</u> at ¶¶ 132–162.

On April 23, 2024, the Insurers filed their Answer to the Amended Complaint, asserting affirmative defenses and counterclaims.  <u>See</u> Answer Am. Compl. (Doc. No. 39).  On July 8, 2024, the Insurers filed an Answer to the Amended Complaint, asserting affirmative defenses and amended counterclaims.  <u>See</u> Second Answer Am. Compl. (Doc. No. 54).  The Insurers' surviving amended counterclaims seek damages based on Colt's alleged breach of the Interim Defense Funding Agreement, Count Two, and reimbursement for expenses paid by AISLIC on or after the Fourth IDFA was executed, Count Five.  <u>See</u> Am. Countercl. at ¶¶ 50–68, 82–84.

On June 13, 2024, Colt's moved to dismiss the Insurers' counterclaims.  Plaintiff's Motion to Dismiss Counterclaims ("Mot. Dismiss Countercl.") (Doc. No. 49).  The court, treating the Motion as a Motion to Dismiss the Insurers' Amended Counterclaims, granted the Motion in part and denied it in part.  See Ruling on Motion to Dismiss (Doc. No. 94).  The court dismissed Counts One, Three, and Four of the Insurers' Amended Counterclaim.  See id.

On October 7, 2024, Colt's filed a Motion for Summary Judgment.  See Pl.'s Mot. The Insurers filed their Motion for Summary Judgment the same day.  See Def.s' Mot.

## III.    LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016).  If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Cross Com. Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all

inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

When, as here, both parties come before the court on cross-motions for summary judgment, the court is not required to grant judgment as a matter of law for either side. See Ricci v. DeStafano, 530 F.3d 88, 109-10 (2d Cir. 2008). "Rather the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Id. at 110.

## IV.    DISCUSSION

Both parties move for summary judgment, and in so doing, raise a variety of arguments as to the appropriate interpretation of various contracts. Before addressing these arguments, the court notes that, under Connecticut law, "[i]nsurance policies are interpreted based on the same rules that govern the interpretation of contracts." Warzecha v. USAA Cas. Ins. Co., 206 Conn. App. 188, 191 (2021). "The determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide as disclosed by the provisions of the policy . . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning[.]" Johnson v. Connecticut Ins. Guar. Ass'n, 302 Conn. 639, 643 (2011) (internal quotation marks omitted). In attempting to determine the question of the parties' intent at the time of contracting, the court must "look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result[.]" Id. (internal quotation marks

14

omitted).  "As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading."  Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co., 255 Conn. 295, 305 (2001) (internal quotation marks omitted).

With these principals in mind, the court turns to the parties' summary judgment motions, beginning with the Insurers' Motion.

A.    The Insurers' Motion for Summary Judgment

The Insurers move for summary judgment arguing the Fourth IDFA controls the parties' obligations to pay defense expenses or, in the alternative, the Insurance Policy as modified by Endorsement #C controls.  Def.s' Mem. at 16–19, 21–28; Def.s' Reply at 1–8.  Accordingly, the Insurers argue Colt's claims fail to the extent they are based on the Insurance Policy.  See Def.s' Mem. at 16–19, 21–28; Def.s' Reply at 1–8.  The Insurers assert summary judgment is warranted as to their breach of contract claim, arguing Colt's breached the Fourth IDFA by failing to pay certain defense expenses.  Def.s' Mem. at 19–20; Def.s' Reply at 10.  Finally, the Insurers maintain Colt's claims of bad faith and claims against National Union should be dismissed.  Def.s' Mem. at 28–33; Def.s' Reply at 9.  Colt's opposes these arguments.  See Pl.'s Opp'n.

1.    Whether the Policy, or Interim Defense Funding Agreement controls.

According to the Insurers, the parties intended the Fourth IDFA to supersede the Insurance Policy with respect to the parties' defense obligations arising from the Gary Lawsuit.  See Def.s' Mem. at 16–17.  That this was the intent of the parties is clear on the face of the Fourth IDFA, according to the Insurers.  Id. at 17.  Colt's argues in

opposition that the plain language of the Fourth IDFA does not evidence the parties' intent to permanently supplant this aspect of the Insurance Policy.  Pl.'s Opp'n at 14–16.

Under Connecticut law, "[a] recognized test for whether a later agreement between the same parties to an earlier contract constitutes a substitute contract looks to the terms of the second contract.  If it contains terms inconsistent with the former contract, so that the two cannot stand together it exhibits characteristics . . . indicating a substitute contract."  Centerplan Constr. Co., LLC v. City of Hartford, 343 Conn. 368, 408, 274 A.3d 51, 76 (2022) (internal quotation marks omitted).

The court concludes the Fourth IDFA supersedes the Insurance Policy with respect to the parties' obligations to pay defense expenses arising from the Gary Lawsuit.  The First IDFA bears signatures from representatives of Colt's and National Union, dated October 14 and 15, 1999.  See Goldsmith Aff., Ex. C at AIG000019.[19] Regarding payment of defense expenses, paragraph 3(A) of the First IDFA reads, "Within forty-five (45) days of the execution of the delivery of this Agreement, Colt's shall pay the sum of $250,000 toward its outstanding Defense Expenses and by March 31, 2000, Colt's shall pay an additional $250,000 toward its outstanding and subsequently incurred defense expenses."  Id. at AIG000017.  While the First IDFA was extended twice, neither of these extensions materially changed the terms of the Agreement.  See id. at AIG000021– AIG000022, AIG000025.  The extensions did, however, provide that Colt's was to pay an additional $250,000 toward defense expenses incurred within a

---

[19] The Affidavit is titled "J. Goldstein Affidavit part 2," however, the court believes this Affidavit is mistitled because it was electronically signed by Jeffrey H. Goldsmith.  See Goldsmith Aff.  Accordingly, the court refers to this Affidavit as the Goldsmith, not Goldstein, Affidavit.

specific timeframe and that National Union was to pay the remaining balance of Colt's defense expenses incurred within a given timeframe.  Id.

The First IDFA was extended a fourth time, in an agreement titled Fourth Amendment to and Extension of Interim Defense Funding Agreement, what the court calls the Fourth IDFA.  Orin Decl., Ex. S.  The Fourth IDFA bears signatures from representatives of Colt's, AISLIC, and National Union and is dated December 6, 2005. Id. at CM003891.[20]  At various times throughout Colt's Local Rule 56(a)(2) Statement, it contends that no agreement known as the "Fourth DFA" ever existed.  E.g., Pl.'s 56(a)(2) Stmt. at ¶ 54.  However, Colt's admits that it found copies of a document it refers to as the "fourth extension of the Interim Defense Funding Agreement" in its possession.  Id. at ¶ 35 (citing Orin. Decl., Ex. CC, Dan Spencer Transcript ("Pl.'s Spencer Tr.") at 40:5–22).  Further, during a deposition of Dan Spencer ("Mr. Spencer"), Colt's former General Counsel, the Insurers' counsel showed Mr. Spencer a document bearing bates numbers ranging from CM003888 to CM003892.  Orin Decl., Ex. OO, Pl.'s Spencer Tr. at 59:22–24.  Upon viewing this document, Mr. Spencer testified that Colt's produced the document, which was executed by the parties, and that Mr. Spencer had no reason to conclude the document originated from any place other than Colt's own files.  Id. at 61:24–62:14; Def.s' 56(a)(1) Stmt., Ex. 4, Dan Spencer Transcript ("Def.s' Spencer Tr.") a  64:2–65:19.[21]  The court's review of the same document, which

_____

[20] In addition to a copy of the Agreement offered by the plaintiffs, which the plaintiff included as part of their Motion for Summary Judgment, the defendants also offered a copy of the same agreement in support of their motion.  See Goldsmith Aff., Ex. C.

[21] The parties have provided three exhibits featuring excerpts of the transcript from Mr. Spencer's deposition.  Those exhibits are: Plaintiff's Exhibit CC, offered in support of the plaintiff's Motion for

bears bates numbers CM003889 to CM003891, shows the document is titled "Fourth Amendment to and Extension of Interim Defense Funding Agreement."  Orin Decl., Ex. S at CM003889–CM003891.  Having reviewed the document at issue, and considered Mr. Spencer's testimony, the court concludes the record evidence indisputably shows the parties executed a document extending and amending the First IDFA, the Fourth IDFA.

The Fourth IDFA incorporates the terms of the First IDFA, unless those terms are "supplemented, modified or amended" thereafter.  Id. at CM003889.  The parties supplemented the terms of the First IDFA through paragraph 5 of the Fourth IDFA.  That paragraph reads, in part:

> In addition to the amount of Defense Expenses Colt's has paid prior to the date hereof, Colt's agrees to pay the further sum of $250,000 toward its outstanding and subsequently incurred Defense Expenses in each calendar year beginning in 2005 until final judgment has been entered and all appeals have been exhausted for the remaining Firearms Litigation . . . .  It is understood and agreed by the parties hereto that beginning with the payment due in 2006, Colt's only shall be obligated to pay the actual Defense Expenses incurred in any year to the extent that the $250,000 amount has been exceeded.  These amounts shall be the only Defense Expenses to be paid by Colt's to AISLIC subsequent to the date hereof.

Id. at CM003891.[22]  Thus, pursuant to paragraph 5, Colt's is obligated to pay $250,000 in defense expenses incurred each year, beginning in 2005, as a result of the Gary Lawsuit, until a final judgment is issued, and all appeals have been exhausted.  See id.

Summary Judgment and cited in its Local Rule 56(a)(2) Statement, Plaintiff's Exhibit OO, offered in support of the plaintiff's Opposition to the defendants' Motion, and Defendant's Local Rule 56(a)(1) Statement Exhibit 4.

[22] "Firearms Litigation" is defined in the First IDFA, which the Fourth IDFA incorporates, to mean litigation in which Colt's has been named as a defendant by municipalities whereby the municipalities allege Colt's handguns were defective and improperly marketed.  See Goldsmith Aff., Ex. C at AIG0000016.  Because the only Firearms Litigation at issue in the instant case is the Gary Lawsuit, the court will use the term Gary Lawsuit to refer to litigation contemplated under the IDFA agreements.

Paragraph 5 of the Fourth IDFA contrasts with prior extensions of the First IDFA, which provided only that Colt's was obligated to pay $250,000 in defense expenses arising within a fixed time.  See id. at AIG000017 (governing payment of defense expenses by March 31, 2000); Id. at AIG000021 (governing the same but requiring payment by June 30, 2001); Id. at AIG000022 (the same but setting a deadline of October 1, 2002); Id. at AIG000025 (the same but implementing a deadline of October 1, 2003).

Paragraph 8 of the Fourth IDFA reads: "Colt's, for itself and its successors and assigns, agrees not to pursue a claim against AISLIC for reimbursement of those Defense Expenses that Colt's has agreed to pay pursuant to the Interim Defense Funding Agreement and the subsequent extensions thereof, including this Fourth Amendment and Extension Agreement."  Def.s' Reply at 2 (quoting Goldsmith Aff., Ex. C at AIG000029); accord Orin Decl., Ex. S at CM003891.  According to the Fourth IDFA, which incorporates the definition of defense expenses from the First IDFA, defense expenses are "the reasonable counsel fees incurred by Colt's in connection with the defense of the Firearms Litigation and other litigation expenses[.]"  Goldsmith Aff., Ex. C at AIG000029.

Accordingly, and on the basis of the terms of the Fourth IDFA that the court has just discussed, the court concludes that the Fourth IDFA supersedes the Policy with respect to the parties' obligations to make payments arising from the Firearms Litigation at issue here: the Gary Lawsuit.

Colt's observes that each iteration of the IDFA is styled as a temporary agreement, which Colt's says implies the parties did not intend any version of the IDFA to supersede the Insurance Policy.  Pl.'s Opp'n at 14–16.  Indeed, Colt's contends that

19

nowhere in the IDFA does it expressly state the parties intended the Agreement to supplant the Insurance Policy.  Id. at 14–15.  However, that the Fourth IDFA contains no such express provision does not resolve this question because the parties are not required to expressly state that a later contract supersedes a prior contract for the court to arrive at such a conclusion.  See Baldwin v. EMI Feist Catalog, Inc., 805 F.3d 18, 29 (2d Cir. 2015) (applying New York law) ("an intention to enter into a substitute contract may be express or implied."); 29 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 73:36 (4th ed. 1993) (explaining that the parties' intent for a new agreement to abrogate a former agreement may be exhibited "by implication").[23]

Also, Colt's notes the accompanying Tolling and Non-Waiver Agreement, to which the IDFA refers, was extended multiple times.  Pl.'s Opp'n at 16.  If the parties intended the IDFA to supersede the Insurance Policy, Colt's suggests the parties would not have created a mechanism by which the Tolling and Non-Waiver Agreement required regular extension.  See id.

The court rejects Colt's interpretation of what the Tolling and Non-Waiver Agreement suggests about the parties' intentions to supersede the original Policy.  First, by the express terms of the Tolling and Non-Waiver Agreement, as amended by the Fourth Extension of the Tolling and Non-Waiver Agreement, it expires only after final judgment has been entered in the Gary Lawsuit and all appeals have been exhausted.  Goldsmith Aff., Ex. F at AIG000026.  The Policy, in contrast, does not mention the Gary

---

[23] Colt's criticized Baldwin, which was cited by the Insurers, Def.s' Mem. at 17, noting that Baldwin "does not involve insurance at all".  Pl.'s Opp'n at 15.  As the court has explained, however, see supra, part IV, insurance contracts are interpreted using the same principals as any other contract.

Lawsuit, or any other Firearms Litigation, as a basis for determining when the Policy terminates.  See O'Rourke Aff., Ex. E at AIG000035 (policy period is December 1, 1998 to December 1, 1999).  Second, and as already explained, even if the provisions of the Tolling and Non-Waiver Agreement were otherwise, paragraphs 5 and 8 of the Fourth IDFA make it clear that it alone governs the parties' defense expense obligations as they pertain to defense expenses arising from the Gary Lawsuit.

Viewing the terms of the Fourth IDFA as a whole, and considering all relevant portions of the Agreement together, the court concludes the Fourth IDFA manifests the parties' intent that it supersedes the Insurance Policy as to the issue of payment of defense expenses arising from the Gary Lawsuit.

> 2.    Whether Colt's terminated the Fourth Interim Defense Funding Agreement.

Even if the Fourth IDFA controlled the parties' obligations at one point, Colt's argues it is no longer operative because Colt's terminated the Tolling and Non-Waiver Agreement through a letter dated July 31, 2023, sent by Mr. Spencer, to agents of the Insurers, Jack Napier and Gloria Levinsohn "or [their] successor['s], if applicable[.]"  Pl.'s Opp'n at 13 (citing Orin Decl., Ex. Q at CM003331).  Attached to the July 31, 2023, letter is the First Tolling and Non-Waiver Agreement, which includes paragraph 7 that reads:  "This Agreement may not be terminated by either party at any time prior to October 1, 2000.  Thereafter, either party may terminate this Agreement upon thirty (30) days prior written notice to the other party of its intent to do so."  Orin Decl., Ex. Q at CM003333.  The paragraph continues, requiring that, in the event Colt's wishes to

terminate the Tolling and Non-Waiver Agreement, notice should be sent to Jack Napier and Gloria Levinsohn of AIG.  Id. at CM003334.

The Insurers respond that the Fourth IDFA cannot be unilaterally terminated. Def.s' Reply at 4.  Instead, under the terms of the Fourth Amendment and Extension of the Tolling and Non-Waiver Agreement ("Fourth Tolling and Non-Waiver Agreement"), which the Fourth IDFA incorporates, the agreement terminates automatically upon the issuance of a final judgment in the Gary Lawsuit and the exhaustion of all avenues of appeal.  See id.  The operative provision of the Fourth Tolling and Non-Waiver Agreement reads, "[i]t is agreed that the last sentence of Paragraph 7 of the Tolling and Non-Waiver Agreement," which Colt's quotes in its July 31, 2023, termination letter, "is deleted in its entirety and replaced with the following: For purposes of this Agreement, The term 'Termination Date' shall mean the latest date that final judgment has been entered and all appeals have been exhausted for the remaining Firearms Litigation." Goldsmith Aff., Ex. F at AIG000026.  As a result, the Insurers argue, Colt's July 31, 2023 letter could not have terminated the Agreement.  See Def.s' Reply at 4.

Even if this provision applies, Colt's replies, the Insurers cannot now assert that Colt's July 31, 2023 termination letter is ineffective because the Insurers failed to raise that argument through a motion to dismiss filed prior to answering Colt's Amended Complaint.  Pl.'s Opp'n at 2, 19.  However, Colt's cites neither a rule of Federal Civil Procedure nor a case supporting this proposition, and the court knows of no reason why the Insurers should have been so required.

While the parties may have been unaware of the Fourth IDFA when Colt's sent its purported termination letter on July 31, 2023, see Pl.'s 56(a)(2) Stmt. at ¶ 55, this does

22

not change the terms of the Agreement, nor does it change the effect of the Fourth Tolling and Non-Waiver Agreement.  The Fourth Tolling and Non-Waiver Agreement provides that neither party can unilaterally terminate the Fourth IDFA.  <u>See</u> Goldsmith Aff., Ex. F at AIG000026.

The court concludes Colt's did not terminate the Fourth IDFA on July 31, 2023. Thus, the Fourth IDFA is operative until a final judgment is rendered in the Gary Lawsuit and appeals have been exhausted.  Having concluded that the Fourth IDFA controls the parties' financial obligations at issue in this case, the court does not consider the parties' arguments about whether Endorsement #C is a part of the Insurance Policy, or whether under the Policy, the Insurers have the right, but not the duty, to defend Colt's in the Gary Lawsuit.

       3.     Whether either party breached the Fourth Interim Defense Funding Agreement

According to the Insurers, they are entitled to summary judgment on their counterclaim for breach of contract for two reasons.  Def.s' Mem. at 20; <u>see</u> Def.s' Reply at 10.  First, the Insurers assert Colt's breached the Fourth IDFA by failing to pay certain defense expenses.  Def.s' Mem. at 20.  Second, the Insurers argue Colt's breached the Fourth IDFA by filing the instant lawsuit.  <u>Id.</u>  Colt's responds that it did not breach the Fourth IDFA; instead, the Insurers breached the Fourth IDFA by sending a letter dated May 28, 2021, in which letter the Insurers shared their view that they were no longer obligated to pay Colt's defense expenses.  Pl.'s Opp'n 17–20.

a.    Colt's purported failure to pay defense expenses

The Insurers argue Colt's breached the terms of the Fourth IDFA by failing to pay

certain defense expenses, which the Insurers say Colt's was required to pay directly to

the law firms defending Colt's in the Gary Lawsuit.  See id.; Def.s' Reply 3.  Colt's

responds that the terms of the Fourth IDFA give the Insurers the right to be reimbursed

for defense expenses, but do not require Colt's to pay defense expenses in the first

instance.  Pl.'s Opp'n at 17.  Thus, Colt's was not obliged to pay firms defending it in the

Gary Lawsuit directly, and any failure by Colt's to pay law firms directly cannot constitute

a breach of the Fourth IDFA.  See id.

Part A of paragraph three of the First IDFA provides that Colt's is to pay "the sum

of $250,000 toward its outstanding Defenses Expenses[.]"  Goldsmith Aff., Ex. C at

AIG000017.  The provision does not specify to what entity these funds should be paid.

Id.  Part B of the same paragraph of the First IDFA provides that National Union "shall

pay . . . $500,000 to Jones, Day, Reavis & Pogue" and shall make subsequent

payments to the same firm.  Id.  The Fourth IDFA added sub-paragraphs F, G, and H to

paragraph 3 of the IDFA.  See Orin Decl., Ex. T at CM003889–CM003890.  Sub-

paragraphs F, G, and H each reference Colt's obligations to pay certain defense

expenses "pursuant to paragraph 5" of the Fourth IDFA.  Id.  The paragraph, that is

paragraph 5, to which sub-paragraphs F, G, and H refer provides, in part, "Colt's shall

make the $250,000 payment for 2005 to AISLIC in four equal installments of $62,500[.]"

Id. at CM003891.  It further provides:

> that beginning with the payment due in 2006, Colt's only shall be obligated to pay
> the actual Defense Expenses incurred in any year to the extent that the $250,000

amount has not been exceeded.  These amounts shall be the only Defense Expenses to be paid by Colt's <u>to AISLIC</u> subsequent to the date hereof.

<u>Id.</u> (emphasis added).  As evidenced by the express terms of paragraph 3(B) of the First IDFA, the parties were capable of indicating when certain payments should be made directly to a law firm.  Goldsmith Aff., Ex. C at AIG000017 (directing National Union to pay Jones Day).  However, sub-paragraphs F, G, and H of paragraph 3 of the Fourth IDFA each require Colt's to make certain payments "pursuant to paragraph 5," which itself directs Colt's to make payments "to AISLIC."  Orin Decl., Ex. S at CM003889, CM0038891.  Accordingly, Colt's would be in breach of the Fourth IDFA if it failed to make required payments "to AISLIC."

The Insurers maintain that it is a distortion of the Fourth IDFA to conclude that Colt's is required to pay AISLIC and not the firms directly.  <u>See</u> Def.s' Reply at 3.  This is a distortion, according to the Insurers, because it relies on the juxtaposition of paragraphs 3(G) and 5.  <u>See id.</u>  Far from distorting the terms of the Agreement, however, the court's reading of the Fourth IDFA is sound because the court's interpretation considers the Fourth IDFA in its totality and gives effect to each provision at issue.  <u>O'Brien v. U.S. Fid. & Guar. Co.</u>, 235 Conn. 837, 843 (1996) ("When interpreting a contract, we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result."); <u>accord</u> <u>Connecticut Dermatology Grp., PC v. Twin City Fire Ins. Co.</u>, 346 Conn. 33, 42, (2023).  Further, because the terms at issue are unambiguous, the court's approach gives effect to the plain meaning of those terms, which is in keeping with Connecticut law.  <u>Connecticut Dermatology</u>, 346 Conn. at 41

25

("the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning."). Accordingly, the court concludes that, by the express terms of the Fourth IDFA, Colt's is required to pay certain defense expenses "to AISLIC."

The Insurers cite extrinsic evidence to support their argument that Colt's was obliged to pay defense expenses directly to firms providing it legal services. The court will not consider this extrinsic evidence, however, because the terms of the contract are unambiguous. Gabriel v. Gabriel, 324 Conn. 324, 341 (2016) ("When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract."). And "[the] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." Lexington Ins. Co. v. Lexington Healthcare Grp., Inc., 311 Conn. 29, 38 (2014). However, even if the court were to consider the Insurers' extrinsic evidence, it would not change the court's reading of the provisions at issue. The Insurers cite an email that appears to have been sent on November 28, 2006 by Joseph Dieso ("Mr. Dieso") of Colt's to Mr. Campbell of AIG and appears to include an attachment with an invoice from Jones Day. Def.s' Reply at 3 fn. 4 (citing Goldsmith Aff., Ex. I (Doc. No. 86-3)). Mr. Dieso writes: "Attached is the Jones Day bill for services rendered in the NYC case in September 2006. By my calculations, we now have submitted bills totaling $264,418.06, which exhausts the $250,000 'retention' spelled out in the Interim Defense Funding Agreement." Id. In the court's view, the exhibit does not significantly bolster the Insurers' reading of the provision at

26

issue because the exhibit only shows that Colt's "submitted bills" to the Insurers, not that Colt's directly paid Jones Day or any other firm.  See id.[24]

Colt's argues that, even if it failed to pay certain defense expenses to AISLIC, the Insurers cannot now claim Colt's breached the Agreement by failing to pay defense expenses because the Insurers failed to timely request reimbursement of the payments at issue.  Pl.'s Opp'n at 17–18.  In support of this argument, Colt's cites Hartford Roman Cath. Diocesan, Corp. v. Interstate Fire & Cas. Co., 199 F. Supp. 3d 559 (D. Conn. 2016).  There, the court considered the meaning of a proof of loss provision and whether the insured submitted adequate proof of loss to the insurer such that the insured was entitled to damages for the insurer's failure to pay.  Id. at 591–92.  Here, by contrast, the Agreement includes no such provision.  Colt's next cites Cont'l Cas. Co. v. Stronghold Ins. Co., 866 F. Supp. 143 (S.D.N.Y. 1994), aff'd, 77 F.3d 16 (2d Cir. 1996), which is inapposite because there, an insurer was not in breach of an insurance policy until the insured asked the insurer to pay a covered loss and the insurer refused.  Id. at 145.  Here, by contrast, it is the insurer, not the insured, that was to be reimbursed.  For similar reasons, the final case Colt's cites is inapplicable: that case involved doctors seeking reimbursement from an insurance company for medical services rendered. See Pl.'s Opp'n at 17 (citing Klay v. Humana, Inc., 382 F.3d 1241, 1264 (11th Cir. 2004)).  Colt's is correct that the Klay court explained the plaintiffs in that case had to prove, as an element of their breach of contract claim, that they had filed reimbursement

---

[24] Further, the Insurers cite to no evidence that, pursuant to the Fourth IDFA, law firms billed Colt's directly for expenses arising from the Gary Lawsuit, and that the parties understood Colt's was to pay these bills until Colt's satisfied its payment obligations under the Fourth IDFA.  See Def.s' Mem. at 19–21; Def.s Reply at 3.

requests.  382 F.3d at 1264.  Importantly, however, this requirement stemmed not from a general principle of contract law, but instead from the facts of that case in which the terms of the contracts, in conjunction with certain regulations, required the plaintiffs to submit formal reimbursement requests to the insurer.  Klay, 382 F.3d at 1247–48.

Having determined the Fourth IDFA requires Colt's to pay to AISLIC certain defense expenses, the court now considers whether the Insurers have come forward with sufficient evidence such that a reasonable jury could find Colt's breached the Fourth IDFA.

The Insurers claim Colt's breached the Fourth IDFA because the Insurers have paid $173,364.29 in defense expenses since 2005, and $78,568.28 of this amount equals defense expenses that Colt's was required to pay, but did not.  Def.s' 56(a)(1) Stmt. at ¶ 46; see Def.s' Mem. at 20; Def.s' Reply at 10.  The Insurers cite as support Colt's damages analysis, which includes a table summarizing putative defense expenses it incurred between 2021 to 2024. Def.s' Ex. 6 at 2–4; see Def.s' 56(a)(1) Stmt. at ¶¶ 45.  The Insurers also cite Colt's response to the Insurers' interrogatories, which includes a similar table. Def.s' Ex. 7 at 18–20; see Def.s' 56(a)(1) Stmt. at ¶¶ 45. Finally, the Insurers cite their amended and supplemented damages analysis, which amounts to one page with three figures and citations to various invoices that are not attached to the exhibit.  Def.s' Ex. 8 at 3; see Def.s' 56(a)(1) Stmt. at ¶ 46.  For example, a footnote to the damages analysis provides that, "[i]n support of this calculation, Defendants refer to their internal financial summaries[;]" the footnote then cites to various documents that are not attached to the cited exhibit.  Def.s' Ex. 8.

Colt's responds by citing deposition testimony of Mr. Goldsmith, in which Colt's counsel asked Mr. Goldsmith if he was aware of any letter sent by the Insurers asking Colt's to pay outstanding defense expenses for a given calendar year. Pl.'s Opp'n at 17–18 (citing Orin Decl., Ex. EE, Goldsmith Transcript ("Goldsmith Tr.") at 302:14–303:16). Mr. Goldsmith testified that he was unaware of any such document. Goldsmith Tr. at 303:12–13, 303:15–16. However, the court has concluded the Insurers were not required, as a matter of law, to request reimbursement from Colt's before they could seek damages for breach. See, supra. While the court has concluded the Insurers were not obligated to request reimbursement under the terms of the Fourth IDFA, Colt's may introduce evidence at trial that the Insurers' failed to seek reimbursement of defense expenses, and that this failure supports Colt's position that Colt's did not breach the Fourth IDFA.

Colt's further argues that, if anything, Mr. Goldsmith's testimony suggests Colt's satisfied its obligations under the Fourth IDFA, because Mr. Goldsmith testified that Colt's made its required payments in 2006 pursuant to the terms of the Fourth IDFA. Pl.'s Opp'n at 18 (citing Goldsmith Tr. at 284:11–21).

In the court's view, the evidence put forward by the Insurers is minimal, and Colt's has offered some evidence to rebut the Insurers' contention that Colt's failed to pay certain defense expenses. Drawing all reasonable inferences in Colt's favor, as the court must in considering the Insurers' Motion for Summary Judgment, the court concludes the evidence cited by the Insurers is insufficient to establish that there is no issue of material fact about whether Colt's breached the Fourth IDFA.

b.    The Insurers' May 28, 2021 letter to Colt's

Colt's argues the Insurers breached the Fourth IDFA when they sent a letter to Colt's on May 28, 2021, in which the Insurers took the position that they were no longer obligated to pay for Colt's defense expenses arising from the Gary Lawsuit.  Pl.'s Opp'n at 18–19.  The May 28, 2021 letter states that it is the Insurers' position that they are not obligated to continue to pay defense expenses "based on the terms of the Interim Funding Agreement[.]"  Orin Decl., Ex. F at CM003330.  In Colt's view, this letter amounts to a breach of the Fourth IDFA because the Insurers were required to pay defense expenses upfront, and their refusal to do so violated the terms of the Agreement.  Id.  As the court has already explained, supra, part IV.A.3.a, the Insurers respond by maintaining that they are not obligated to pay defense expenses upfront.  See Def.s' Reply at 3.

While the court does not agree with the Insurers' interpretation of the Fourth IDFA, supra at part IV.A.3.a, assuming, arguendo, that the May 28, 2021 letter could amount to a breach of the Fourth IDFA, the letter would only amount to a breach if Colt's alleged earlier failure to pay its portion of defense expenses was not itself a material breach of the Fourth IDFA.  That is because "a material breach by one party discharges the other party's subsequent duty to perform on the contract."  Weiss v. Smulders, 313 Conn. 227, 263 (2014).  Because it remains an issue of fact about whether Colt's breached the Agreement by failing to pay defense expenses, as the Insurers allege, the court cannot decide the related issue of whether the May 28, 2021 letter sent by the Insurers amounts to a breach of the Agreement.

30

c.    Colt's filing of the instant lawsuit

The Insurers next claim Colt's breached the Fourth IDFA by filing the instant

lawsuit.  Def.s' Mem. at 20–21.  According to the Insurers, Colt's filing of this lawsuit

violated paragraph 8 of the Fourth IDFA, which amended the IDFA.  See id.; Goldsmith

Aff., Ex. C  at AIG000029; Orin Decl., Ex. S at CM002891.  In response, Colt's argues it

did not breach the Agreement; rather, the Insurers breached the Agreement by refusing

to pay defense expenses as evidenced by a letter dated May 28, 2021, sent from AIG to

Colt's.  See Pl.'s Opp'n at 18–19.  For the same reason that the court does not decide

whether the May 28, 2021 letter amounts to a breach of the Fourth IDFA, the court does

not decide whether Colt's filing of the instant lawsuit amounts to a breach.

4.    Whether Colt's bad faith claims fail as a matter of law

Colt's claims the Insurers acted in bad faith by: (1) acting dishonestly to deprive

Colt's of coverage under the Policy at issue; (2) breaching the terms of the Fourth IDFA

by sending the May 28, 2021 letter; and (3) failing to disclose the existence of the

Fourth IDFA for some time, even after Colt's asked the Insurers for the agreements on

which the Insurers relied in sending the May 28, 2021 letter.  See Am. Compl., Counts

Three and Six (Count Three is brought against AISLIC, Count Six is brought against

National Union).  The Insurers argue Colt's claims of bad faith fail as a matter of law,

first, because Colt's claims cannot be brought as to the Insurance Policy because the

Policy does not govern the payment of defense expenses arising from the Gary Lawsuit.

Def.s' Mem. at 29.  Second, the bad faith claims fail as to the Fourth IDFA, because

Colt's had a copy of the Fourth IDFA in its own records, as evidenced by Colt's

production of that agreement during discovery.  Id. at 32.  Thus, the Insurers could not

31

have acted in bad faith by failing to disclose a document that Colt's possessed.  See id.
The Insurers do not appear to address Colt's second basis of its bad faith claims.  See
id. at 29.  Colt's opposes these arguments, asserting that the Insurers did act in bad
faith by refusing to honor the terms of the Insurance Policy and instead requiring Colt's
to agree to the First IDFA when the Insurers knew Colt's was in a precarious financial
position.  Pl.'s Opp'n at 30–31.

 "The implied duty of good faith and fair dealing is 'a purely instrumental duty
intended to protect insureds' rights to receive their policy benefits.'" Capstone Bldg.
Corp. v. Am. Motorists Ins. Co., 308 Conn. 760, 796–97 (2013) (quoting D. Richmond,
"Bad Insurance Bad Faith Law," 39 Tort Trial & Ins. Prac. L.J. 1, 18 (2003)).  One
violates this duty by acting in bad faith, which "implies both actual or constructive fraud,
or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or
some contractual obligation, not prompted by an honest mistake as to one's rights or
duties, but by some interested or sinister motive."  De La Concha of Hartford, Inc. v.
Aetna Life Ins. Co., 269 Conn. 424, 433 (2004) (internal quotation marks omitted).
Importantly, "bad faith is not actionable apart from a wrongful denial of a benefit under
the policy[.]"  Capstone Bldg. Corp., 308 Conn. at 798.

 Through the formation of the First IDFA, the parties agreed the payment of
defense expenses attributable to the Gary Lawsuit would be governed not by the
Insurance Policy, but by the First IDFA, which was subsequently amended.  See, supra,
part IV.A.1-2.  Because the Fourth IDFA controls the parties' obligations to pay defense
expenses, Colt's claim that the Insurers acted in bad faith by failing to defend Colt's
under the terms of the Insurance Policy must fail because the Policy no longer applies.

See Capstone Bldg. Corp., 308 Conn. at 800 ("the covenant [of good faith] is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." (internal quotation marks omitted)).

As a separate basis for its bad faith claim, Colt's asserts the Insurers acted in bad faith by sending the May 28, 2021 letter, in which the Insurers maintained they were no longer obligated to pay defense expenses. Am. Compl. at ¶¶ 126, 158. The Insurers do not address this letter in the portion of their Memorandum about Colt's bad faith claim. See Def.s' Mem. at 29-33. However, the Insurers' failure to address this issue is of no moment because, for reasons the court has already explained, the court will not reach a conclusion about whether the Insurers breached the Fourth IDFA by sending the May 28, 2021 letter. See, supra, part IV.A.3.b. Thus, because the court will not reach a conclusion about whether the Insurers breached, Colt's claim of bad faith on this basis survives the Insurers' Motion for Summary Judgment.

Colt's assertion that the Insurers acted in bad faith by failing to timely disclose the Fourth IDFA fails as a matter of law because a claim of bad faith may only be brought as to an insurer's refusal to honor the terms of a contract. See Capstone Bldg. Corp., 308 Conn. at 800. Here, the court is aware of no term in the Fourth IDFA, and Colt's cites to none in its Amended Complaint or Opposition, that would give rise to the parties' obligations to furnish a copy of the Fourth IDFA upon request. Thus, Colt's may not base its bad faith claim on the Insurers' supposed failure to timely disclose the Fourth IDFA. While the Insurers' supposed failure to furnish the Agreement may not serve as a separate basis of Colt's bad faith claim, Colt's may rely on this supposed

33

failure as evidence of the Insurers' bad faith with respect to the issuing of their May 28, 2021 letter.  See Capstone Bldg. Corp., 308 Conn. at 801 (an insurer's failure to adequately investigate a claim could not serve as a basis of the insured's bad faith claim but could be considered as evidence of bad faith).

Accordingly, Colt's claim of bad faith survives the Insurers' Motion; however, the only basis upon which Colt's may assert its bad faith claims is that the Insurers acted in bad faith by sending Colt's the May 28, 2021 letter disavowing the Insurers' obligations to pay certain defense expenses.

> ### 5.    Whether Colt's claims against National Union Fail as a matter of law

Colt's brings three claims against National Union, which mirror the claims Colt's brings against AISLIC.  See Am. Compl., Counts Four, Five, Six.  For each of these claims, Colt's makes certain allegations in the alternative arising from National Union's conduct under the Fourth IDFA.  E.g., Am Compl. at ¶ 134 ("to the extent the document identified as the Fourth Interim Extension remains in full force and effect, National Union was obligated thereunder to continue defending Colt's in the Gary Lawsuit until final resolution of the Gary Lawsuit, including all appeals.").  Because the court has concluded the operative agreement is the Fourth IDFA, only Colt's claims against National Union that involve the Fourth IDFA could survive.  Accordingly, the court must consider whether Colt's has come forward with enough evidence upon which a reasonable jury could find National Union failed to perform its obligations under the Fourth IDFA.

The Insurers argue Colt's cannot maintain its claims against National Union because, while the First IDFA was between National Union and Colt's, the Fourth IDFA retroactively amended the First IDFA such that the operative Agreement is between AISLIC and Colt's only.  Def.s' Mem. at 28; Def.s' Reply at 10, 10 FN 23.  Indeed, Paragraph 1 of the Fourth IDFA provides:

> The Interim Defense Funding Agreement, and subsequent extensions thereof, are corrected and amended retroactively to substitute American International Specialty Lines Insurance Company ("AISLIC") for National Union Fire Insurance Company of Pittsburgh, PA as the real party in interest and to replace the designation "National Union" with the designation "AISLIC" wherever 'National Union' appears.

Orin Decl., Ex. S at CM003889.

Colt's argues it would be prejudiced if National Union was dismissed from the case because National Union played a significant role in the events underlying this litigation, as evidenced by multiple references to National Union in the First IDFA.  Pl.'s Opp'n at 28-30.  Indeed, Colt's notes the Fourth IDFA includes sub-paragraph 3(H).  Id. at 29.  While Colt's is correct that sub-paragraph 3(H) mentions National Union, it does so only to provide that AISLIC and National Union agree not to pursue reimbursement of defense expenses incurred prior to the date of the Fourth IDFA, December 6, 2005. Orin Decl., Ex. S at CM003889–CM0038891.  Colt's argues further that "National Union—not AISLIC—paid Colt's defense costs directly[.]"  Pl.'s Opp'n at 29.  Colt's cites an accounting in its Local Rule 56(a)(2) Statement, though it does not cite this exhibit in its Opposition.  See Pl.'s 56(a)(20 Stmt. at ¶ 36.  This accounting, which is dated August 8, 2002, appears to have been prepared by an outside accounting firm.  See Orin Decl. Ex. KK at CM06010.  The accounting purports to show National Union paid dozens of

invoices submitted by Jones Day in November and December of 1999.  Id. at CM006018–CM006020.  It is appears these payments were made pursuant to the First IDFA, which provided that National Union would pay $500,000 to Jones Day on or before November 1, 1999, the balance of Colt's then outstanding defense expenses to Jones Day on or before December 1, 1999, and, thereafter, within 60 days of receipt of invoice.  Goldsmith Aff., Ex. C at AIG000017.  This evidence, however, does not suggest National Union paid Colt's defense expenses pursuant to the operative agreement: the Fourth IDFA.  The accounting was prepared several years before the Fourth IDFA was executed, and the court is aware of no evidence identified by Colt's suggesting National Union paid Colt's defense expenses pursuant to the Fourth IDFA.  Indeed, with respect to interim defense agreements, the only such agreement that National Union is alleged to have breached is the Fourth IDFA.  Am. Compl. at ¶ 136.[25]  Thus, National Union's involvement in a prior versions of the IDFA, which are inoperative, does not bolster Colt's contention that National Union was involved in administering the Fourth IDFA.

Colt's argues AISLIC played a "minimal role" in administering the Insurance Policy and that National Union was instead responsible for administering the Policy.  Pl.'s Opp'n at 30.  Even if the court were to credit Colt's assertion—that National Union played a prominent role in administering the Policy—it is of no moment because, as the court has explained, the instant dispute squarely involves the terms of the Fourth IDFA, not the Policy, which unambiguously refers to AISLIC.

---

[25] Colt's Amended Complaint refers to the Fourth IDFA as the Fourth Interim Extension.  See Am. Compl. at ¶ 136.

Drawing all reasonable inferences in Colt's favor, the court concludes Colt's failed to adduce sufficient evidence to rebut the Insurers' argument that National Union played no role in administering the Fourth IDFA.[26]  Accordingly, the court grants the Insurers' Motion to the extent it seeks to dismiss National Union from this case.

\*        \*        \*

In sum, the Insurers' Motion for Summary Judgment is granted in part and denied in part.  The Insurers' Motion is granted to the extent Colt's claims against AISLIC are based on the Insurance Policy, with or without Endorsement #C, and to the extent Colt's seeks to claim bad faith for AISLIC's failure to disclose the Fourth IDFA.  It is also granted as to Colt's claims against National Union: Counts Four, Five, and Six of Colt's Amended Complaint.  The Motion is otherwise denied.

Therefore, Colt's remaining claims are: Count One, to the extent it asserts a breach under the Fourth IDFA; Count Two, to the degree Colt's seek declaratory relief under the Fourth IDFA; and Count Three, to the extent Colt's claims AISLIC acted in bad faith by sending Colt's the May 28, 2021 letter disavowing its obligation to pay certain defense expenses.

B.    Colt's Motion for Summary Judgment

According to Colt's, the court should grant its Motion for Summary Judgment because the Insurance Policy at issue provides the Insurers have a duty to defend Colt's in the Gary Lawsuit.  Pl.'s Mem. at 15–27; Pl.'s Reply at 6–9.  That this duty to

---

[26] Colt's claims against National Union arise only under the Insurance Policy and, in the alternative, the "Fourth Interim Extension," which is a phrase Colt's uses to refer to the Fourth IDFA.  See Am. Compl. at ¶¶ 134–36, 143–46, 158; see also Am. Compl. at ¶ 85 ("Fourth Amendment and Extension of the Interim Defense Funding Agreement ('Fourth Interim Extension').").

defend is present and is triggered by the Gary Lawsuit is evident, according to Colt's, from the plain language of the Policy and extrinsic evidence.  Pl.'s Mem. at 15–27; Pl.'s Reply at 6–9.  Colt's further argues the court should grant its Motion as to its claim of bad faith, because even though the Policy clearly provides the Insurers have a duty to defend Colt's, the Insurers unreasonably refused to do so, contravening the clear terms of the Policy.  Pl.'s Mem. at 27–29; Pl.'s Reply at 9–10.  Finally, Colt's maintains its Motion should be granted as to the Insurers' counterclaims, which fail as a matter of law and fact.  Pl.'s Mem. at 30–37; Pl.'s Reply at 10.[27]  The Insurers oppose Colt's Motion. See Def.s' Opp'n.  The court will address each of these arguments in turn.

1.    Whether the Insurers' have a duty to defend Colt's under the Insurance Policy.

Colt's argues the express terms of the Insurance Policy at issue establish the Insurers have a duty to defend it in the Gary Lawsuit.  Pl.'s Mem. at 18–24; Pl.'s Reply at 6–8.  Colt's argues further that extrinsic evidence supports its interpretation of the Policy, and the Insurers' argument that the Insurers have the right but not the duty to defend Colt's is untenable considering the express terms of the Policy and extrinsic evidence.  Pl.'s Mem. at 24–27; Pl.'s Reply at 8–10.  The Insurers argue the Policy does not confer upon them a duty to defend.  See Def.s' Opp'n at 17–25.

The court does not reach the question of whether the Insurance Policy provides the Insurers have a duty to defend Colt's because the Fourth IDFA, not the Policy,

---

[27] Colt's also argues that certain of the Insurers' counterclaims are redundant.  Pl.'s Mem. at 35–37.  The court has already dismissed these counterclaims in a Ruling docketed after the parties filed the instant Motions.  Ruling on Motion to Dismiss at 18.

governs the parties' obligations as to defense expenses arising from the Gary Lawsuit. Supra, part IV.A.1–2.

2.      Whether the Insurers acted in bad faith.

In Colt's view, the court should grant its Summary Judgment Motion on its claims in Counts Three and Six of its Amended Complaint that the Insurers acted in bad faith by refusing to defend Colt's even though the Policy requires the Insurers to do so.  Pl.'s Mem. at 27–29; see Pl.'s Reply at 9–10. According to Colt's, the Insurers also acted in bad faith by taking advantage of Colt's poor financial health by requiring it to agree to the IDFA and by failing to disclose the Fourth IDFA and refusing to tell Colt's how much it owed the Insurers in defense costs from 2006 and later.  Pl.'s Mem. at 29.  The Insurers oppose these arguments.  Def.s' Opp'n at 25–30.

For the reasons the court has already explained, Colt's cannot bring its bad faith claim pursuant to the Insurers' supposed failure to abide by language in an insurance policy that does not govern the parties' obligations to pay defense expenses.  See, supra, part IV.A.4.  Regarding Colt's bad faith claim under the Fourth IDFA, Colt's has failed to adduce sufficient evidence to foreclose the possibility that a jury could find in the Insurers' favor as to this claim.  It is, therefore, a triable issue of fact as to whether the Insurers acted in bad faith under to the Fourth IDFA.  Accordingly, the court denies Colt's Motion to the extent it seeks summary judgment as to its claim of bad faith.

3.      Whether the Insurers' breach of contract counterclaim fails.

The Insurers' counterclaim for breach of the Fourth IDFA should be dismissed, according to Colt's, because it is untimely, Colt's performed its obligations under the Fourth IDFA, and the Insurers did not suffer recoverable damages.  Pl.'s Mem. at 30–

39

33; Pl.'s Reply at 10.  The Insurers argue its counterclaim is not barred by the statute of limitations and is supported by evidence that Colt's breached the Fourth IDFA and the Insurers suffered damages.  Def.s' Opp'n at 31–35.

The court has already concluded the Insurers' breach of contract counterclaim is not barred by the statute of limitations because of the Fourth Tolling and Non-Waiver Agreement.  See Ruling on Motion to Dismiss at 8–11.  The court is unpersuaded by Colt's other arguments that summary judgment should be granted as to the breach of contract counterclaim.  The Insurers have offered some evidence suggesting Colt's failed to make certain payments after 2007, despite being required to do so under the Fourth IDFA.  See Goldsmith Aff., Ex. M (depicting a spreadsheet showing payments purportedly made by AISLIC, which should have been paid by Colt's).  Further, the Insurers' breach of contract counterclaim is not only premised on Colt's supposed failure to make payments; it is also premised on Colt's filing of this lawsuit, which the Insurers claim contravene the Fourth IDFA because filing such a lawsuit is, according to the Insurers, prohibited by the language of the Agreement.  See, supra, part IV.A.3.c.  Colt's does not directly address this aspect of Colt's breach of contract counterclaim in its moving papers.  See Pl.'s Mem. at 31–33; Pl.'s Reply at 10.  Further, the Insurers have adduced sufficient evidence upon which a jury could find that they experienced cognizable damages by paying for defense expenses, which the Insurers claim Colt's owed under the Fourth IDFA, and incurring litigation expenses because of the instant case.  Goldsmith Aff., Ex. M; Def.s' Ex. 8.  Thus, the court denies Colt's Motion to the extent it seeks judgment in its favor as to the Insurers' breach of contract counterclaim.

40

4.    Whether the Insurers' reimbursement counterclaim fails as a matter of law or fact.

Colt's characterizes the Insurers' reimbursement counterclaim (Count Five) as a recoupment counterclaim, which it argues fails as a matter of law.  Pl.'s Mem. at 34–; Pl.'s Reply at 10.  Colt's made largely the same argument as part of its Motion to Dismiss, which the court ruled on after the parties moved for summary judgment.  <u>See</u> Ruling on Motion to Dismiss at 15–17.  Because the court has already concluded the Insurers reimbursement counterclaim may be brought, it will not now revisit Colt's arguments to the contrary.  <u>See</u> <u>id.</u>

Colt's further argues the Insurers' reimbursement claim fails as a matter of fact.  Pl.'s Mem. at 35.[28]  The court disagrees.  The Insurers have come forward with some evidence that they paid for litigation expenses despite not being required to do so under the Fourth IDFA.  <u>Supra</u>, part IV.B.3.  The court, therefore, denies Colt's Motion to the degree it seeks judgment in its favor on the Insurers' counterclaim for reimbursement.

---

[28] Colt's advances this argument through a three sentence paragraph in which it cites Exhibits H, X, Z, AA, BB, without explaining why those exhibits establish Colt's is entitled to summary judgment on the Insurers' reimbursement counterclaim.  <u>See</u> Pl.'s Mem. at 35.

**V.     CONCLUSION**

For the reasons stated above, the defendants' Motion for Summary Judgment (Doc. No. 86) is granted in part and denied in part.  It is granted to the extent the plaintiff's claims are based on the Insurance Policy and to the extent Colt's bad faith claim is premised on AISLIC's failure to disclose the Fourth IDFA.  The Motion is also granted as to Colt's claims against National Union: Counts Four, Five, and Six of Colt's Amended Complaint.  The Motion is otherwise denied.

The plaintiff's Motion for Summary Judgment (Doc. No. 85) is denied.

**SO ORDERED.**

Dated at New Haven, Connecticut this 25th day of June 2025.


/s/ Janet C. Hall

Janet C. Hall
United States District Judge